UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| DONNA MARSHALL, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | No. 19 C 3718 |
| v. | ) | |
| | ) | Judge John J. Tharp, Jr. |
| GRUBHUB, INC., | ) | |
| | ) | |
| Defendant. | ) | |

**UNITED STATES OF AMERICA'S BRIEF IN DEFENSE OF THE TCPA**

Since 1991, the Telephone Consumer Protection Act ("TCPA") has prohibited the use of certain automated technologies in making calls to cell phones. *See* 47 U.S.C. § 227(b)(1)(A)(iii) (the "robocall restriction"). There is no dispute that the robocall restriction was valid when enacted. In a 2015 amendment, Congress added an exception to the statute to allow the use of automated technologies for calls made to collect debts owed to or guaranteed by the United States (the "government-debt exception"). Last year, in *Barr v. American Association of Political Consultants* (*AAPC*), 140 S. Ct. 2335 (2020), the Supreme Court held that the government-debt exception is content based and severed the exception. Thus, in light of *AAPC*, there is also no dispute that a call made today in violation of the robocall restriction would subject a robocaller to liability. *See id.* at 2353 (plurality op.) ("With the government-debt exception severed, the remainder of the law is capable of functioning independently and thus would be fully operative as a law.").

Nonetheless, Grubhub, Inc. ("Defendant") argues that it would be unconstitutional to apply the robocall restriction to the calls at issue in this case because Defendant made them after the government-debt exception was enacted but before the *AAPC* decision. In Defendant's view, this time period (roughly 2015-2020) amounts to a regulatory donut hole in which the TCPA cannot

1

be enforced against any robocaller because of the presence of the government-debt exception, even though all agree that the restriction was constitutional before and after that time period.

This result was squarely rejected in the *AAPC* plurality opinion, in which three Justices confirmed that the Court's decision holding the government-debt exception invalid "does not negate the liability of parties who made robocalls" prior to the Court's decision, *id.* at 2355 n.12, and neither of the opinions concurring in the judgment with respect to severability disputed that conclusion, *see id.* at 2357 (Sotomayor, J.); *id.* at 2363 (Breyer, J.). And although a few district courts have ignored that clear direction and held that calls and texts made before the government-debt exception's severance are immune from the TCPA, a large majority of district courts have rejected Defendant's argument that the robocall restriction was unenforceable for this five-year period.

Defendant's argument also fails because "an unconstitutional statutory amendment 'is a nullity' and 'void' when enacted, and for that reason has no effect on the original statute." *AAPC*, 140 S. Ct. at 2353 (plurality op.) (quoting *Frost v. Corp. Comm'n of Okla.*, 278 U.S. 515, 526-27 (1929)). In circumstances like these, where the statute was valid as originally enacted, an unconstitutional amendment is "powerless to work any change in the existing statute," and the original "statute must stand as the only valid expression of the legislative intent." *Frost*, 278 U.S. at 526-27. Based on that rule, the Supreme Court has allowed liability under statutes that were valid when enacted but to which invalid amendments had been promulgated before the alleged violation.

## BACKGROUND

### I. Statutory Background and the *AAPC* Decision

"Voluminous consumer complaints about abuses of telephone technology – for example, computerized calls dispatched to private homes – prompted Congress to pass the TCPA." *Mims v. Arrow Fin. Servs., LLC*, 565 U.S. 368, 370-72 (2012); *see* TCPA, Pub. L. No. 102-243, § 2(5)-(6),

2

105 Stat. 2394, 2394. As pertinent here, the TCPA's robocall restriction makes it unlawful:

> to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any automatic telephone dialing system or an artificial or prerecorded voice . . . to any telephone number assigned to a . . . cellular telephone service[.]

47 U.S.C. § 227(b)(1)(A)(iii). This provision applies to both phone calls and text messages. *See In re Rules & Regs. Implementing the TCPA*, 18 FCC Rcd. 14014, 14115 (2003).

In 2015, Congress amended the TCPA to provide that the robocall restriction does not apply to calls made solely to collect a debt owed to or guaranteed by the United States (the "government-debt exception"). *See* Bipartisan Budget Act of 2015, Pub. L. No. 114-74, § 301(a)(1), 129 Stat. 584, 588. The Communications Act of 1934 contains a severability provision (covering the TCPA), which states that "[i]f any provision of this chapter . . . is held invalid, the remainder . . . shall not be affected." 47 U.S.C. § 608.

In July 2020, the Supreme Court held in *AAPC* that the government-debt exception was content-based and violated the First Amendment. 140 S. Ct. at 2352 (plurality op.); *id.* at 2364 (Gorsuch, J.) (concurring as to that conclusion). However, the Court rejected the argument that the presence of the government-debt exception meant that the overall restriction on robocalls should be invalidated. *See id.* at 2348-49 (plurality op.); *id.* at 2362 (Breyer, J.) (concurring in judgment in part and dissenting in part) (agreeing that "the government-debt exception provides no basis for undermining the general cell phone robocall restriction"). The Court further held that the government-debt exception was severable, and thus "the correct result in this case is to sever the . . . exception and leave in place the longstanding robocall restriction." *Id.* at 2355 (plurality op.); *see also id.* at 2357 (Sotomayor, J.) (concurring in judgment); *id.* at 2363 (Breyer J.) (concurring in judgment with respect to severability and dissenting in part). As the plurality explained, "an unconstitutional statutory amendment 'is a nullity' and 'void' when enacted, and for that reason has

3

no effect on the original statute." *Id.* at 2353 (quoting *Frost*, 278 U.S. at 526-27).

The plurality opinion contained a footnote in which three Justices discussed the effect that severing the government-debt exception would have on parties' liability for prior violations of the robocall restriction. The opinion explained that "although our decision means the end of the government-debt exception, no one should be penalized or held liable for making robocalls to collect government debt after the effective date of the 2015 government-debt exception and before the entry of final judgment by the District Court . . . or such date that the lower courts determine is appropriate." *Id.* at 2355 n.12. However, the plurality continued by flatly stating that "[o]n the other side of the ledger, our decision today does not negate the liability of parties who made robocalls covered by the robocall restriction." *Id.* Neither of the opinions concurring with respect to severability questioned that conclusion. *See id.* at 2357 (Sotomayor, J.); *id.* at 2363 (Breyer, J.).

## II.     Judicial Decisions After *AAPC*

Subsequent to the Supreme Court's decision in *AAPC*, several defendants moved to dismiss complaints that sought enforcement of the TCPA against calls and text messages made after the government-debt exception was added but before *AAPC* was decided. To date, four district courts have agreed with this argument and dismissed TCPA complaints to the extent they sought damages for calls and texts made during this time period. *See Creasy v. Charter Commc'ns, Inc.*, 489 F. Supp. 3d 499 (E.D. La. 2020); *Lindenbaum v. Realgy, LLC*, No. 1:19-cv-2862, 2020 WL 6361915 (N.D. Ohio Oct. 29, 2020); *Hussain v. Sullivan Buick-Cadillac-GMC Truck, Inc.*, No. 5:20-cv-38, 2020 WL 7346536 (M.D. Fla. Dec. 11, 2020); *Cunningham v. Matrix Fin. Servs.*, 4:19-cv-896, 2021 WL 1226618 (E.D. Tex. Mar. 31, 2021). However, the large majority of district courts[1] have

---

[1] *See Abramson v. Fed. Ins. Co.*, 8:19-cv-2523, 2020 WL 7318953 (M.D. Fla. Dec. 11, 2020); *Shen v. Tricolor Cal. Auto Grp., LLC*, 20-cv-7419, 2020 WL 7705888 (C.D. Cal. Dec. 17, 2020); *Trujillo v. Free Energy Sav. Co.*, 5:19-cv-2072, 2020 WL 8184336 (C.D. Cal. Dec. 21, 2020); *Rieker v. Nat'l Car Cure, LLC*, 3:20-cv-5901, 2021 WL 210841 (N.D. Fla. Jan. 5, 2021); *Stoutt v. Travis Credit Union*, 2:20-

rejected the argument that robocallers can avoid liability for robocalls made before the government-debt exception's severance. Indeed, the same district court judge who dismissed the TCPA complaint in *Hussain* has more recently denied a defendant's request seeking to dismiss a TCPA complaint on identical grounds. *See Boisvert v. Carnival Corp.*, 8:20-cv-2076, 2021 U.S. Dist. LEXIS 47397, at *4 (M.D. Fla. Mar. 12, 2021) ("Upon further reflection, the Court departs from its earlier opinion because, since the Court's Order in *Hussain*, every court faced with this same issue has concluded that a plaintiff may continue to bring § 227(b) claims post-*AAPC*.").

### III.     Procedural Background

The operative complaint asserts violations of 47 U.S.C. § 227(b)(1)(A)(iii). ECF No. 24. Defendant moved to dismiss on October 10, 2019, asserting that the complaint does not plausibly allege the use of prohibited technology. ECF No. 31-1, at 6-14. On January 19, 2021, Defendant filed an additional motion to dismiss arguing that the complaint should be dismissed because (according to Defendant) *AAPC* rendered the robocall restriction unconstitutional during the time period in which Defendant allegedly called Plaintiff. ECF No. 60 ("Def. Br.").

On March 2, 2021, the government moved for an extension of time to determine whether to intervene to defend the constitutionality of the TCPA. ECF No. 68. The Court granted the government's motion, setting the deadline to intervene as April 29, 2021. ECF No. 69.

---

cv-1280, 2021 WL 99636, (E.D. Cal. Jan. 12, 2021), *granting mot. to certify appeal*, 2021 WL 1143612 (Mar. 25, 2021); *Bonkuri v. Grand Caribbean Cruises, Inc.*, 20-cv-60638, 2021 WL 612212 (S.D. Fla. Jan. 19, 2021); *Less v. Quest Diagnostics, Inc.*, 3:20-cv-2546, 2021 WL 266548 (N.D. Ohio Jan. 26, 2021); *McCurley v. Royal Sea Cruises, Inc.*, 17-cv-986, 2021 WL 288164 (S.D. Cal. Jan. 28, 2021); *Distasio v. Edible Arrangements, LLC*, 16-cv-538, 2021 WL 1087499 (D. Conn. Feb. 1, 2021); *Massaro v. Beyond Meat, Inc.*, 3:20-cv-510, 2021 WL 948805 (S.D. Cal. Mar. 12, 2019); *Miles v. Medicredit, Inc.*, 4:20-cv-1186, 2021 WL 1060105 (E.D. Mo. Mar. 18, 2021); *Whittaker v. WinRed Tech. Servs., LLC*, 20-cv-8150, 2021 WL 1102297 (D. Ariz. Mar. 23, 2021); *Moody v. Synchrony Bank*, 20-cv-61, 2021 WL 1153036 (M.D. Ga. Mar. 26, 2021); *Hossfeld v. Am. Fin. Sec. Life Ins. Co.*, 19-cv-60597, 2021 WL 1186526 (S.D. Fla. Mar. 29, 2021); *Franklin v. Navient, Inc.*, 17-cv-1640, 2021 WL 1535575 (D. Del. Apr. 19, 2021); *Valdes v. Nationwide Real Estate Execs.*, 20-cv-1734, Dkt. 35 (C.D. Cal. Apr. 22, 2021).

**ARGUMENT**

**I.     The Court Should First Resolve Nonconstitutional Grounds For Decision**

As an initial matter, this Court should not address Defendant's constitutional challenge until it resolves all potential nonconstitutional issues. "[P]rior to reaching any constitutional questions, federal courts must consider nonconstitutional grounds for decision." *Gulf Oil Co. v. Bernard*, 452 U.S. 89, 99 (1981). In addition to its constitutional challenge, Defendant argues that the complaint should be dismissed on non-constitutional grounds. *See* ECF No. 31-1. As a matter of constitutional avoidance, the Court should first address these non-constitutional grounds of decision, which may obviate the need to decide the constitutional question.

**II.    Defendant May Be Held Liable For Calls Sent Before the *AAPC* Decision**

In holding that the government-debt exception was unconstitutional and severable from the remainder of the TCPA, the Supreme Court in *AAPC* affirmed the validity of the TCPA's prohibition on making robocalls to cell phones without the consent of the person being called. *See* 140 S. Ct. at 2349, 2353 (plurality op.). The plurality further explained that the Court's opinion "does not negate the liability of parties who made robocalls" prior to the Court's decision. *Id.* at 2355 n.12. Therefore, if the Court reaches the constitutional question, it should hold (consistent with *AAPC*) that Defendant may be held liable for violations of the robocall restriction occurring after the enactment of the government-debt exception and prior to *AAPC*.

**A. Because The Government-Debt Exception Is Unconstitutional, It Has No Effect on the Robocall Restriction, Which Has Been Operative at All Relevant Times**

There is no dispute that the robocall restriction was valid before the enactment of the government-debt exception and that it is valid and enforceable today. Defendant urges, however, that the robocall restriction was rendered unenforceable for the period of time between the enactment of the government-debt exception and the Court's decision in *AAPC* that the exception is severable.

6

That view cannot be squared with *AAPC* and the Supreme Court's prior decisions concerning the effect of invalid amendments to constitutional statutes. The Supreme Court has long made clear that an unconstitutional amendment is "powerless to work any change in the existing statute," and that the original "statute must stand as the only valid expression of the legislative intent." *Frost*, 278 U.S. at 526-27. Thus, the validity of a provision "c[an] not be impaired by the subsequent adoption of what were in form amendments, but, in legal effect, were mere nullities." *Eberle v. Michigan*, 232 U.S. 700, 705 (1914).

Citing those principles, *AAPC* confirmed the continuing validity of the robocall restriction, explaining that "an unconstitutional statutory amendment" like the government-debt exception "'is a nullity' and 'void' when enacted, and for that reason has no effect on the original statute." 140 S. Ct. at 2353 (plurality op.) (quoting *Frost*, 278 U.S. at 526-27). *AAPC* further concluded that the content-based government-debt amendment was severable from the remainder of the statute, *see id.* at 2349; *id.* at 2357 (Sotomayor, J.) (concurring in judgment); *id.* at 2363 (Breyer, J.) (concurring in judgment with respect to severability and dissenting in part), and that its enactment did not have any effect on the concededly valid restrictions already in effect, *id.* at 2348-49 (plurality op.) (rejecting the suggestion that the amendment "betray[ed] a newfound lack of genuine congressional concern for consumer privacy" that called the robocall restriction into doubt).

Prior Supreme Court decisions applying those principles confirm that a defendant may be liable for violating a provision notwithstanding the enactment of an unconstitutional amendment. In *Eberle*, the Court affirmed the petitioner's conviction under a Michigan law prohibiting the manufacture of alcohol even though amendments to the law enacted prior to the alleged violation were inconsistent with principles of equal protection. 232 U.S. at 706. The Court explained that the original "statute had been held to be constitutional, and prohibited, without discrimination, the

7

manufacture of all liquors. That valid act the defendants violated, and their conviction cannot be set aside" based on the enactment of unconstitutional amendments to the rule. *Id.* Likewise, in *United States v. Jackson*, 390 U.S. 570, 591 (1968), the Court held that the defendants could be tried under the Federal Kidnapping Act for alleged violations of its original terms, which prohibited the interstate transport of kidnapped individuals, notwithstanding the unconstitutionality of an amendment that conditioned the possibility of capital punishment on the exercise of the right to trial by jury. In holding the capital punishment clause invalid and severable, *id.* at 583, 586, the Court confirmed that "the unconstitutionality of that clause does not require the defeat of the law as a whole," *id.* at 586. And the Court held that, notwithstanding the unconstitutional amendment, "[t]he appellees may be prosecuted for violating" the original terms of the Act. *Id.* at 591.

Defendant's position cannot be reconciled with the holdings in *Eberle* and *Jackson*. In each case, the defendant allegedly violated a law that was constitutional as originally enacted. *See AAPC*, 140 S. Ct. at 2353. And in each case, the violation of the original provision occurred after the legislature had enacted an amendment that was later held to be invalid and severable. Thus, the principles that provided for liability in *Eberle* and *Jackson* likewise allow that result here.

Defendant's argument is also at odds with longstanding principles of judicial review insofar as Defendant suggests that the *AAPC* decision altered the law. *See, e.g.*, Def. Br. at 1. When the "Court construes a statute, it is explaining its understanding of what the statute has meant continuously since the date when it became law," and it is "not accurate to say that the Court's decision . . . 'changed' the law that previously prevailed." *Rivers v. Roadway Exp., Inc.*, 511 U.S. 298, 313 n.12 (1994). An interpretation of a statute in a judicial opinion is a statement of "what the law *is*," not "what it is today *changed to*, or what it will *tomorrow* be." *James B. Beam Distilling Co. v. Georgia*, 501 U.S. 529, 549 (1991) (Scalia, J., concurring in judgment). Accordingly,

8

when the Supreme Court holds that part of a statute is unconstitutional, it is holding that the provision was unconstitutional from the outset, not that it is newly invalid upon the entry of final judgment. *See Chicago, I. & L. Ry. Co. v. Hackett*, 228 U.S. 559, 566 (1913) ("Th[e] act was therefore as inoperative as if it had never been passed, for an unconstitutional act is not a law, and can neither confer a right or immunity nor operate to supersede any existing valid law."); *see also Harper v. Va. Dep't of Tax'n*, 509 U.S. 86, 97 (1993) (confirming that when the Court "applies a rule of federal law to the parties before it, that rule is the controlling interpretation of federal law and must be given full retroactive effect in all cases still open on direct review and as to all events, regardless of whether such events predate or postdate [the Court's] announcement of the rule").

*AAPC*'s holding that the government-debt exception was unconstitutional and thus "as inoperative as if it had never been passed," *Hackett*, 228 U.S. at 566, means that the exception was always invalid and was therefore "powerless to work any change in the existing statute," even for a period of time, *Frost*, 278 U.S. at 526-27. The Court's holding that the exception was severable likewise "is a question of interpretation and of legislative intent." *Dorchy v. Kansas*, 264 U.S. 286, 290 (1924). The *AAPC* plurality explained that the Communications Act's severability clause "squarely covers the unconstitutional government-debt exception and requires that we sever it," 140 S. Ct. at 2352, and observed that "the remainder of the robocall restriction did function independently and fully operate as a law for 20-plus years before the government-debt exception was added in 2015," *id.* at 2353. *See also id.* at 2357 (Sotomayor, J.) (concurring in judgment); *id.* at 2363 (Breyer, J.) (concurring in judgment with respect to severability and dissenting in part).

In concluding that the exception was severable from the remainder of the statute, the Court said what the TCPA has always meant, not what it meant as of the date of the Court's decision. *See Rivers*, 511 U.S. at 312-13, 313 n.12. Accordingly, there was never a time when the exception

9

was invalid but not severed; by operation of law, the exception has been both invalid and severed since the date of its enactment, and defendant may be held liable under the valid remainder of the statute. *Cf. United States v. Miselis*, 972 F.3d 518, 547 (4th Cir. 2020) (holding that defendants could be convicted for violating portions of the Anti-Riot Act that the court held were valid and severable from provisions found to violate the First Amendment).

### B. Defendant's Countervailing Arguments Are Meritless

Although Defendant raises several arguments in an attempt to avoid liability, they do not provide a basis for this Court to depart from the traditional understanding of severance principles.

**1.** Defendant's principal contention is that the *AAPC* Court understood itself to be holding the entire robocall restriction – not just the government-debt exception – unconstitutional for a period of time. *See* Def. Br. at 5. That contention disregards *AAPC*'s conclusion that the government-debt exception did not render "the entire 1991 robocall restriction unconstitutional," 140 S. Ct. at 2349 (plurality op.); *see id.* at 2362 (Breyer, J.) (concurring in judgment in part and dissenting in part) (agreeing that "the government-debt exception provides no basis for undermining the general cell phone robocall restriction"), and the plurality's admonishment that *AAPC* "does not negate the liability of parties who made robocalls" prior to the Court's decision, *id.* at 2355 n.12.

Thus, while Defendant correctly notes that unconstitutional laws are void, *see* Def. Br. at 8-9, Defendant incorrectly seeks to apply that principle to the overall robocall restriction (which was constitutional when enacted) rather than the government-debt exception. The Court made clear that the statute's only constitutional defect stemmed from the government-debt exception. *See, e.g.*, *AAPC*, 140 S. Ct. at 2352 ("Enacted in 2015, the government-debt exception added an unconstitutional discriminatory exception to the robocall restriction."); *see also id.* at 2353 (describing the government-debt exception as "the constitutionally offending provision"). Accordingly, it

10

is only the government-debt exception that should be deemed ineffective from its enactment, meaning that this amendment had no effect on the already-existing and constitutional robocall restriction. *See supra*. This result is faithful to the plurality's admonition that litigants should not be able to undermine an entire regulatory scheme merely because one of its marginal provisions is unconstitutional. *See AAPC*, 140 S. Ct. at 2351 (plurality op.) ("Constitutional litigation is not a game of gotcha against Congress, where litigants can ride a discrete constitutional flaw in a statute to take down the whole, otherwise constitutional statute.").

**2.** Defendant asks this Court to ignore the *AAPC* plurality's statement that the decision "does not negate the liability of parties who made robocalls" prior to the Court's decision, 140 S. Ct. at 2355 n.12, arguing that this statement is non-binding dicta. *See* Def. Br. at 9-11. Although it is true that this footnote appeared in an opinion signed by only three Justices, neither of the opinions expressly concurring with respect to severability disagreed with the footnote's conclusion that robocallers who violated the clearly constitutional robocall restriction during the relevant time period should still be liable for those violations of that provision. *See AAPC*, 140 S. Ct. at 2357 (Sotomayor, J.) (concurring in judgment); *id.* at 2363 (Breyer, J., concurring in judgment with respect to severability and dissenting in part). And as explained above, allowing liability for entities like Defendant is consistent with the Supreme Court's treatment of similar instances in which the Court upheld liability for violations of an underlying, lawful provision even after an unconstitutional amendment has later been enacted. *See Eberle*, 232 U.S. at 705; *Jackson*, 390 U.S. at 591.

The Court may also easily reject Defendant's argument that the plurality's statement in the footnote applies only to cases that have already been adjudicated. Def. Br. at 10. The language in the footnote is unrestricted: by its terms it applies to all "parties who made robocalls covered by the robocall restriction." *AAPC*, 140 S. Ct. at 2355 n.12. Defendant identifies nothing in *AAPC*

11

that can reasonably be read to limit this statement's applicability to final judgments.

Defendant suggests that its interpretation of footnote 12 can be inferred from the fact that the same three Justices who endorsed the footnote were the same three Justices who supported severance of an unconstitutional removal-protection provision in *Seila Law LLC v. CFPB*, 140 S. Ct. 2183, 2207-11 (2020). Def. Br. at 10. This inference is unwarranted. First, *Seila Law* was issued just days before *AAPC*, and indeed was cited multiple times in *AAPC*, *see, e.g.*, 140 S. Ct. at 2349, and yet these Justices explicitly stated that the severance of the government-debt exception "does not negate the liability of parties who made robocalls" prior to the Court's decision, 140 S. Ct. at 2355 n.12. Second, *Seila Law* is distinguishable. Because *Seila Law* dealt with the propriety of an agency decision that was made during the time when the CFPB director presumably believed that the removal protections were in effect, *see* 140 S. Ct. at 2195, *Seila Law* raised additional remedial questions with respect to that agency action. Because this case involves no agency action, there is no analogous remedial question. Unlike a case challenging the decision of an agency actor whose decision might have been influenced by reliance on unconstitutional removal protections (even if those protections would later prove unenforceable), here there can be no question that Congress intended entities that violated the robocall restriction to be liable for those infractions. In addition, the statute at issue in *Seila Law* contained the unconstitutional provision at its enactment, *see* Dodd-Frank Wall Street Reform and Consumer Protection Act, Pub. L. No. 111-203, § 1011(b)(3), 124 Stat. 1376, 1964 (2010), whereas here the unconstitutional government-debt exception was added decades after the robocall restriction. In those circumstances, entities who violate the original statute may be held liable according to its terms. *See, e.g.*, *Eberle*, 232 U.S. at 705.

**3.** Defendant seems to suggest that holding the government-debt exception void from its enactment would be problematic because it would unfairly expose government-debt collectors to

liability for calls made before the exception was held unconstitutional and severable in *AAPC*. ECF No. 66 ("Def. Reply"), at 5 n.6. Defendant's concern is misplaced. Debt collectors likely would not be liable for calls made to collect government debt before *AAPC*, because doing so would implicate the "fundamental principle . . . that laws which regulate persons or entities must give fair notice of conduct that is forbidden or required." *FCC v. Fox Television Stations, Inc.*, 567 U.S. 239, 253 (2012); *cf.* Model Penal Code § 2.04(3)(b)(i) (providing a defense to criminal liability when a defendant "acts in reasonable reliance upon an official statement of the law, afterward determined to be invalid or erroneous, contained in . . . a statute or other enactment"). Thus, even though the government-debt exception was invalid from its inception and never had effect, it does not follow that debt collectors should be penalized for reasonably relying on its enactment. Rather, debt collectors would likely avoid liability because they lacked fair notice that their calls could subject them to liability, which is not the case for entities like Defendant.[2]

Defendant contends, however, that this result also raises a constitutional problem because it "would impose the same speech discrimination that [*AAPC*] held to be unconstitutional." Def. Reply at 4; *see also* Def. Br. at 8. This argument is also incorrect. Any differential treatment between debt collectors and other robocallers would not be based on preferential treatment of favored speech, but rather because certain callers had fair notice of potential liability while others did not. That distinction is undisputedly content neutral.

**4.** Defendant asserts that its potential liability would result from "retroactive application" of the robocall restriction, Def. Br. at 7, and that imposing liability "would plainly run afoul of due process and the *Ex Post Facto* Clause," Def. Reply at 5. This too is incorrect. Any liability imposed

---

[2] One court has concluded that the TCPA can be applied to entities like Defendant and *also* to debt collectors making calls to collect government debt before *AAPC* was decided. *Franklin*, 2021 WL 1535575, at *1. For the reasons set forth herein, the first conclusion is correct and the second is likely incorrect.

13

on Defendant would stem from violations of the robocall restriction, which as discussed, was fully constitutional and operative at all relevant times. Moreover, Defendant cannot claim that its activities were prejudiced in any way. The robocall restriction was passed approximately thirty years ago and has applied to entities like Defendant since its enactment. Defendant cannot complain that it was unaware of the TCPA's prohibitions at the time it undertook the actions that are the subject of the present complaint. Accordingly, imposing liability on Defendant would offend neither due process principles nor the Ex Post Facto Clause.

**5.** Defendant cites *Grayned v. City of Rockford*, 408 U.S. 104 (1972) and *Sessions v. Morales-Santana*, 137 S. Ct. 1678 (2017) to argue that liability depends on the constitutionality of the statute at the time of the defendant's actions. *See, e.g.*, Def. Br. at 8-9. These cases are distinguishable. In *Grayned*, the petitioner had been convicted of violating a content-based, anti-picketing ordinance. Following his conviction, the ordinance was amended to omit the exception that had rendered the law content-based. In a footnote, the *Grayned* Court noted that the amendment "has, of course, no effect" on the validity of the petitioner's conviction because the Court "must consider the facial constitutionality of the ordinance in effect when appellant was arrested and convicted." 408 U.S. at 107 n.2. But unlike in *AAPC*, the Court gave no indication in *Grayned* that the statute's content-based exception was severable from the remainder of the statute. There is no indication that the provision contained a severability clause like the one found in the Communications Act, and the Court noted no legislative history indicating that the legislature would have enacted the general prohibition on picketing without the offending exception.[3] Accordingly, the anti-picketing

---

[3] The *Grayned* Court struck down the ordinance at issue after noting it was "identical" to a Chicago ordinance that had been invalidated the same day in *Police Department of Chicago v. Mosley*, 408 U.S. 92 (1972). 408 U.S. at 107. In contrast to *AAPC*, the *Mosley* Court held that the content-based exception called into doubt the validity of the *entire* restriction. *Id.* at 100 ("If peaceful labor picketing is permitted, there is no justification for prohibiting all nonlabor picketing, both peaceful and nonpeaceful.").

14

provision as a whole was invalid as enacted, and the Court held that Grayned could not be convicted under that unconstitutional provision. By contrast, *AAPC* confirms that the robocall restriction was valid when enacted and that the government-debt exception was severable and did not undermine the validity of the restriction. 140 S. Ct. at 2349, 2353 (plurality op.).[4]

**6.** Defendant attempts to distinguish cases like *Frost* and *Eberle* on the ground that they did not involve First Amendment challenges. *See* Def. Reply at 3 n.1. This distinction makes no difference. Cases like *Frost*, *Eberle*, and *Jackson* – as well as the plurality in *AAPC* – demonstrate that when a constitutional statute is affected by a later, unconstitutional amendment, the original and constitutional statute can still be applied. *See supra*. None of these authorities indicated that this conclusion would have changed if the later amendment was struck down under the First Amendment instead of some other constitutional provision.

## CONCLUSION

For the foregoing reasons, Defendant's constitutional challenge should be rejected.

Respectfully submitted,

BRIAN M. BOYNTON
Acting Assistant Attorney General

ERIC R. WOMACK
Assistant Director, Federal Programs Branch

By: s/ Joshua C. Abbuhl
    JOSHUA C. ABBUHL
    Trial Attorney, U.S. Department of Justice
    Civil Division, Federal Programs Branch
    1100 L St. NW
    Washington, DC 20005
    (202) 616-8366
    joshua.abbuhl@usdoj.gov

---

[4] As for *Morales-Santana*, the cited section primarily discussed *Grayned*, which is distinguishable for the reasons stated above. Moreover, the *AAPC* plurality was well aware of this case, *see AAPC*, 140 S. Ct. at 2354 (citing *Morales-Santana*), but nonetheless stated shortly after this citation that *AAPC* "does not negate the liability of parties who made robocalls" prior to that decision. 140 S. Ct. at 2355 n.12.