**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| DONNA MARSHALL, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 19-cv-3718 |
| | ) | |
| GRUBHUB INC., | ) | Judge John J. Tharp, Jr. |
| | ) | |
| Defendant. | ) | |
| | ) | |

**<u>MEMORANDUM OPINION AND ORDER</u>**

Plaintiff Donna Marshall brings this suit on behalf of herself and a putative class against Defendant Grubhub, Inc. for its repeated calls, in violation of the Telephone Consumer Protection Act ("TCPA"). Grubhub now moves to dismiss the complaint for lack of subject matter jurisdiction and failure to state a claim, arguing that the section of the TCPA at issue has since been declared unconstitutional and that Marshall has failed to plausibly state a claim under the statute. Grubhub also moves to strike Marshall's class allegations and maintains that the suit should proceed on an individual basis if it is to go forward. Finding that Marshall has plausibly alleged the use of a robotic voice and that jurisdiction over the case remains secure, Grubhub's motion to dismiss is denied. Further, the motion to strike class allegations is denied as premature.

BACKGROUND[1]

This case arises from a series of calls Marshall received on her cell phone from Grubhub in 2019. Compl. ¶ 14, ECF No. 24.2 Though the calls did not relate to any of Marshall's transactions with Grubhub, they kept coming, ultimately numbering in the dozens or possibly hundreds. Id. ¶ 10. All or most of the calls used robotic or prerecorded voices and many left voicemails like the ones below, taken from transcriptions on Marshall's phone:



Id. ¶ 10.

---

[1] For purposes of a motion to dismiss, the Court accepts the plaintiff's facts as true and resolved all factual disputes in her favor.

[2] The Amended Complaint is the operative pleading and is referred to as "Complaint" throughout.

Shortly after she began receiving the calls, Marshall called the (877) number provided in the voicemail and requested that she be placed on the do-not-call list. *Id.* ¶ 13. Grubhub returned Marshall's call and informed her that the issue was resolved. *Id.* Soon thereafter, however, the calls started up again. On April 23, 2019, Marshall returned one of Grubhub's calls by dialing the number listed on her caller ID, and after speaking to a representative named Henry, asked for a second time that she be placed on their do-not-call list. *Id.* ¶ 14. Nevertheless, the calls continued.

Marshall brings this action on behalf of herself and a class she identifies as "[a]ll persons in the United States whose cellular telephone number Grubhub called using the dialing equipment as was used to call Plaintiff, where such call occurred on or after June 4, 2015" and a subclass of individuals who received prerecorded messages after requesting to be placed on the do not call list. *Id.* ¶ 22. Marshall estimates that there are more than 100 individuals in the proposed class and sub-class. *Id.* ¶ 23.

Marshall filed this action on June 4, 2019, after which Grubhub moved to dismiss for failure to state a claim and to strike class allegations. ECF Nos. 31, 32. Grubhub later moved to dismiss for lack of subject matter jurisdiction, arguing that a recent Supreme Court opinion had rendered the section of the TCPA at issue unconstitutional. ECF No. 60. Under Rule 5.1(c), the Attorney General may intervene within 60 days of filing an appropriate notice that a federal statute has been challenged as unconstitutional. Accordingly, the government intervened, filing a brief in defense of the TCPA's constitutionality. ECF No. 71.

## DISCUSSION

### I.    Constitutionality of Section 227(b)(1)(A)(iii)

As originally enacted in 1991, "the TCPA prohibited almost all robocalls to cell phones." *Barr v. American Association of Political Consultants, Inc.*, 140 S. Ct. 2335, 2344 (2020)

3

("AAPC"). The TCPA's cell phone robocall provision provides that it is unlawful "to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any automatic telephone dialing system or an artificial or prerecorded voice." 47 U.S.C.A. § 227(b)(1)(A)(iii). In 2015, Congress enacted an amendment to the restriction, carving out an exception for calls made to collect on debts owed to or guaranteed by the government. 47 U.S.C.A. § 227(b)(1)(A)(iii) (2015); 129 Stat. 588. But recently, in *AAPC*, the Supreme Court struck down the government debt exception as unconstitutional because it favored government-debt collection speech over other types of speech. Rather than finding the entire TCPA unconstitutional, however, the Court severed the government debt exception from the rest of the statute. *Id.* at 2352.

The debate between the parties in this case thus centers on the robocall provision's status between 2015, when the government debt exception was enacted, and February 11, 2021, the date final judgment was entered by the district court on remand in *AAPC*. Grubhub argues that severability can only apply prospectively, not retrospectively, and therefore, all of § 227(b)(1)(A)(iii)—the entirety of the cell phone robocall prohibition—was unconstitutional during this time period. If that is correct, this Court would lack subject matter jurisdiction over this action. *See Montgomery v. Louisiana*, 136 S. Ct. 718, 724 (2016) (quoting *Ex parte Siebold*, 100 U.S. 371, 376-77 (1880)) (noting that if a law is "unconstitutional and void," it deprives the federal courts of jurisdiction over cases brought under it). Marshall counters that the 2015 amendment was void when enacted and accordingly did not impact the original statute.

The clear weight of authority, however, supports the view that severability of the government debt extension amendment to the TCPA operates retrospectively. To begin, Justice Kavanaugh, who authored the principal plurality opinion in *AAPC,* anticipated the argument and

4

suggested in a footnote that the invalidity of the government debt exception amendment "does not negate the liability of parties who made robocalls covered by the robocall restriction." *Id.* at 2355 n.12. This comment suggests that the robocall provision remained in full force between 2015 to 2021, rather than creating a years-long "donut hole" in which robocallers could escape liability. Grubhub maintains, however, Justice Kavanaugh wrote for the plurality, which did not join this section of the opinion and that his view is therefore only dicta. This argument is off-the-mark, however, as it fails to note that a majority of the justices supported the view that severing the government debt exception amendment did not invalidate the preexisting robocall prohibition set forth in section 227(b)(1)(A)(iii). As Judge Norgle recently explained, a majority of the *AAPC* Court held that

> the constitutional defect created by the government-debt exception was best cured not by declaring the robocall ban completely unenforceable but by declaring only the government-debt exception unenforceable, thereby severing it from the TCPA. *AAPC,* 140 S. Ct. at 2352-55 (Kavanaugh, J., joined by Roberts, C.J., and Alito, J.); *id.* at 2357 (Sotomayor, J.); *id.* at 2363 (Breyer, J., joined by Ginsburg and Kagan, JJ.). Combined, those holdings meant that the First Amendment rights of the political consultant plaintiffs in AAPC were vindicated by eliminating the content discrimination that the government-debt exception created in the TCPA's robocall ban. Yet the AAPC plaintiffs did not get the ultimate relief that they sought—an injunction prohibiting enforcement of the TCPA and the ability to make robocalls with political messages without the threat of TCPA liability. Instead, the effect of AAPC is that the TCPA's "longstanding" robocall ban was left in place and continues to be enforceable against the AAPC plaintiffs and all other robocallers. *AAPC*, 140 S. Ct. at 2355.

*Bilek v. Nat'l Cong. of Emps., Inc.*, No. 1:18-CV-03083, 2021 WL 4027512, at *2 (N.D. Ill. June 28, 2021).

Even if dicta, AAPC's endorsement of retroactive severability to preserve the general cell phone robocall ban is persuasive dicta, and the vast majority of courts that have considered the

issue have come to the same conclusion. The Sixth Circuit (the only circuit court of appeals to have addressed the question as far as this Court is aware) has agreed that severability of the government debt collection exception operated retrospectively such that the validity of the general robocall prohibition survived the unconstitutional amendment. *See Lindenbaum v. Realgy, LLC*, --4th--, 2021 WL 4097320 *2 (6th Cir. Sep. 9, 2021) ("Because unconstitutional enactments are not law at all, it follows that a court conducting severability analysis is interpreting what, if anything, the statute has meant from the start in the absence of the always-impermissible provision."). And almost all of the district courts to have considered the issue post-*AAPC* have also upheld the robocall restriction as constitutional during that window;[3] only a handful have not.[4] Many of the cases supporting the validity of the general prohibition have invoked *Frost v.*

---

[3] In addition to *Bilek,* for example, see *Bakov v. Consolidated World Travel, Inc.,* No. 15 C 2980, 2021 WL 4026978 (N.D. Ill. Mar. 8, 2021) (agreeing "with those courts holding that the offending provision was severable, leaving the balance fully enforceable at all times relevant to this case"); *Person v. Technical Education Services, Inc.*, No. 1:19-cv-03735-SDG, 2021 WL 2336533 (N.D. Ga. 2021); *Lerner v. AmeriFinancial Solutions, LLC*, No. GLR-20-965, 2021 WL 1785138 (D. Md. May 5, 2021); *Valdes v. Nationwide Real Estate Execs., Inc.*, No. SA CV 201-01734-DOC-(JDEx), 2021 WL 2134159 (C.D. Cal. Apr. 22, 2021); *Moody v. Synchrony Bank*, No. 5:20-cv-61, 2021 WL 1153036 (M.D. Ga. Mar. 26, 2021); *Whittaker v. WinRed Tech. Servs., LLC*, No. 20-cv-8150, 2021 WL 1102297 (D. Ariz. Mar. 23, 2021); *Miles v. Medicredit, Inc.*, No. 4:20-cv-1186, 2021 WL 1060105 (E.D. Mo. Mar. 18, 2021); *Massaro v. Beyond Meat, Inc.*, 3:20-cv-510, 2021 WL 948805 (S.D. Cal. Mar. 12, 2021); *DiStasio v. Edible Arrangements, LLC*, No. 3:16-cv-538, 2021 WL 1087499 (D. Conn. Feb. 1, 2021); *Less v. Quest Diagnostics, Inc.*, 3:20-cv-2546, 2021 WL 266548 (N.D. Ohio Jan. 26, 2021); *McCurley v. Royal Sea Cruises, Inc.*, No. 17-cv-986, 2021 WL 288164 (S.D. Cal. Jan. 28, 2021); *Bonkuri v. Grand Caribbean Cruises, Inc.*, No. 20-cv-60638, 2021 WL 612212 (S.D. Fla. Jan. 19, 2021); *Stoutt v. Travis Credit Union*, No. 2:20-cv-1280, 2021 WL 99636, (E.D. Cal. Jan. 12, 2021), *granting mot. to certify appeal*, 2021 WL 1143612 (Mar. 25, 2021); *Rieker v. Nat'l Car Cure, LLC*, No. 3:20-cv-5901, 2021 WL 210841 (N.D. Fla. Jan. 5, 2021); *Trujillo v. Free Energy Sav. Co.*, No. 5:19-cv-2072, 2020 WL 8184336 (C.D. Cal. Dec. 21, 2020); *Shen v. Tricolor Cal. Auto Grp., LLC*, No. 20-cv-7419, 2020 WL 7705888 (C.D. Cal. Dec. 17, 2020); *Abramson v. Fed. Ins. Co.*, No. 8:19-cv-2523, 2020 WL 7318953 (M.D. Fla. Dec. 11, 2020).

[4] *See Cunningham v. Matrix Fin. Servs.*, No. 4:19-cv-896, 2021 WL 1226618 (E.D. Tex. Mar. 31, 2021); *Hussain v. Sullivan Buick-Cadillac-GMC Truck, Inc.*, No. 5:20-cv-38, 2020 WL 7346536 (M.D. Fla. Dec. 11, 2020); *Lindenbaum v. Realgy, LLC*, 497 F. Supp. 3d 290 (N.D. Ohio 2020); *Creasy v. Charter Commc's, Inc.*, 489 F. Supp. 3d 499 (E.D. La. 2020).

*Corporation Commission*, 278 U.S. 515, 526-27 (1929), in which the Supreme Court held that an unconstitutional amendment "is a nullity and, therefore, powerless to work any change in the existing statute." Accordingly, "that [original] statute must stand as the only valid expression of the legislative intent." *Id.* at 527. The *AAPC* Court relied on *Frost* in its discussion of severability, finding that because the government debt exception was unconstitutional, it was a "nullity" and "void when enacted." 140 S. Ct. at 2353.

It follows that because the government debt exception was void when enacted, the pre-2015 TCPA governs and represents the "only valid expression" of Congress's intent. *See Trujillo*, 2020 WL 8184336, at *4 ("the statute was sound before Congress introduced the errant exception"). This approach applies a forward-looking view of severability, rather than a backward-looking one. Understood as such, the rest of the robocall provision of the TCPA remained constitutional between 2015 to 2021. This Court follows the majority view and finds that because the robocall provision was constitutional during the relevant period, it retains subject matter jurisdiction over Marshall's claim.

## II.     Failure to State a Claim

With subject matter jurisdiction secure, the Court turns to whether Marshall has plausibly alleged a TCPA violation. The TCPA's robocall provision provides that it is unlawful "to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any automatic telephone dialing system or an artificial or prerecorded voice." 47 U.S.C.A. § 227(b)(1)(A). An automatic telephone dialing system ("ATDS"), in turn, is defined as "equipment which has the capacity—(A) to store or produce telephone numbers to be called, using a random or sequential number generator; and (B) to dial such numbers." *Id.* § 227(a)(1).

At issue is whether Marshall has plausibly alleged the use of a prerecorded voice or an ATDS. To begin, alleging that a caller used a prerecorded voice requires more than a conclusory statement. Rather, to push the allegation from speculative to plausible, a plaintiff may allege facts such as a "description of a robotic sound of the voice on the other line, a lack of human response when he attempted to have a conversation with the caller," or a "distinctive 'click and pause' after having answered the call." *Martin v. Direct Wines, Inc.*, No. 15 C 757, 2015 WL 4148704, at *2 (N.D. Ill. July 9, 2015) (internal citations omitted). In other words, a plaintiff is at least "required to plead a layman's explanation for why he believed that the solicitation was pre-recorded." *Moore v. CHW Group, Inc.*, No. 18-cv-6960, 2019 WL 3216029, at *3 (N.D. Ill. July 17, 2019).

Grubhub argues that Marshall offers only a conclusory allegation that the calls were conducted with prerecorded or robotic voices. To be sure, Marshall alleges simply: "All or more of the calls to Plaintiff's cell phone included a robotic or prerecorded voice, and many of these calls left voice mails." Compl. ¶ 11. But the screenshots of the voicemail transcription, included in the complaint, shed additional light on the nature of the calls. According to the first transcription, the caller states, "This is Grubhub calling to confirm an order," and then, tellingly, requests that the person on the other end "please enter confirmation code for order number ending with one 585564." *Id.* Requesting that the call recipient enter a confirmation code suggests that the caller was a prerecorded voice; a human caller would have asked for the recipient to read the confirmation code aloud. Further, a human caller would recognize that it had reached a voicemail on the other end and subsequently would not ask for the entry of a confirmation code.[5] At this

---

[5] Marshall supplements these allegations in her response brief, asserting that she preserved recordings of more than 70 messages that are identical in voice and content to the transcription described, aside from the use of a different artificial voice. Resp. at 3, ECF No. 41. A plaintiff may expand on factual allegations in a response brief to the extent it is consistent with the complaint. *Geinosky v. City of Chicago*, 675 F.3d 743, 745 n.1 (7th Cir. 2012). Grubhub responds by arguing

8

stage, Marshall's allegation and corroborating screenshot satisfy the plausibility standard for the use of a prerecorded voice.

The parties also dispute whether Marshall has plausibly alleged Grubhub's use of an ATDS, but the Court needn't resolve that dispute at present because the use of a prerecorded or automated voice suffices to bring the calls within the ambit of the TCPA's robocall prohibition. Use of an ATDS is an alternative basis for liability, not a necessary element. It suffices here to note that a variety of factors may be probative of the use of an ATDS, such as the nature of the alleged violations, the volume of calls, and industry practice. *Weekly v. Fifth Third Bank*, No. 20 CV 01786, 2020 WL 7626737, at *3 (N.D. Ill. Dec. 22, 2020). This issue has been further complicated by the Supreme Court's recent ruling in *Facebook, Inc. v. Duguid*, 141 S. Ct. 1163, 1167 (2021), which held that the capacity to automatically dial stored numbers does not qualify a dialing system as an ATDS. Rather, a system must have, and use, a capacity to store a number with a random or sequential generator or produce a number using such a generator. *Id.* at 1167. *Duguid* left the TCPA's separate prohibition on calls using artificial or prerecorded voices

---

that plaintiffs are not entitled to gap-fill in their response brief to the point that it constitutes an amendment of the complaint. *See Catilina Nominees Proprietary Ltd. v. Stericycle, Inc.*, No. 15-cv-10734, 2021 WL 1165087, at *7 (N.D. Ill. Mar. 26, 2021) (finding that plaintiff could not remedy deficient complaint by adding missing facts in response brief); *Bruno v. Global Experience Specialists, Inc.*, No. 19-cv-06710, 2020 WL 5253139, at *3 (N.D. Ill. Sept. 3, 2020) (finding the complaint "so sparse that considering facts in the response brief as 'consistent' would amount to allowing [the plaintiff] to amend the deficient complaint"). Excessive gap-filling may be a pleading sin, but it is not one that Marshall has committed. Her allegation that she received more than 70 phone calls with identical content isn't the equivalent of making 70 new allegations; properly characterized, it is a single allegation about a characteristic common to the calls Marshall received. What she alleges—and what strongly supports an inference that the calls used prerecorded and/or robotic voices—is that there would likely be some slight, but discernable, variation in the content of the calls had they been made by live callers. properly characterized as more than 70 new allegations. And in any event, having demonstrated that she can add probative factual detail to an amended complaint, the Court would certainly, at this early stage, grant leave to amend if it dismissed the complaint for failing to adequately allege the use of prerecorded and/or robot voices by Grubhub.

untouched, however, so there is no need to delve into whether Marshall has sufficiently alleged that Grubhub called her using an ATDS. Her allegation regarding the ATDS constitutes an alternative legal theory—one that she may or may not be able to substantiate with the benefit of discovery. *See Weekly v. Fifth Third Bank*, 20 CV 01786, 2020 WL 7626737, at *3 (N.D. Ill. Dec. 22, 2020) ("it would be impossible for any plaintiff to know about a system's capacity prior to discovery"). The ATDS inquiry is therefore best deferred following discovery.

### III. Motion to Strike Class Allegations

Finally, Grubhub moves to strike the plaintiff's class allegations under Rule 23, arguing that if its motion to dismiss is not granted in its entirety, the case should proceed only as to Marshall's individual claims. The parties dispute each aspect of this motion, beginning with whether it is appropriate to bring at all. Many courts in this district have recognized that striking class allegations on the pleadings is allowed, but only "when it is apparent from the complaint that class certification is inappropriate." *Rysewyk v. Sears Holding Corp.*, No. 15 CV 4519, 2015 WL 9259886, at *7 (N.D. Ill. Dec. 18, 2015). This approach accords with Rule 23, which stipulates that the court must determine whether to certify the case as a class action "[a]t an early practicable time." *See also Kasalo v. Harris & Harris, Ltd.*, 656 F.3d 557, 563 (7th Cir. 2011) ("Consistent with [the] language [of Rule 23(c)(1)(A)], a court may deny class certification even before the plaintiff files a motion requesting certification.").

But, because motions to strike are generally "disfavored" in this Circuit, *see Heller Financial Inc. v. Midwhey Powder Co., Inc.*, 883 F.2d 1286, 1294 (7th Cir. 1989), striking class allegations at the pleadings stage may only occur "when the pleadings are facially defective and definitively establish that a class action cannot be maintained." *Murdock-Alexander v. Tempsnow*

*Employment*, No. 16-cv-5182, 2016 WL 6833961, at *3-4 (N.D. Ill. Nov. 21, 2016). As a result, this Court may consider a motion to strike class allegations, while approaching it with caution.

The next point of contention is the appropriate scope of review. Marshall argues that the Court should treat it as a typical pleading-based motion under Rule 12(f) and look only to the complaint. Grubhub advocates for a more expansive standard that would allow the Court to consider factual allegations beyond the pleadings, as if it were a Rule 23 motion. Other courts in this district have adopted Grubhub's approach in finding that a motion to strike class allegations opens up more material to the Court's review. *See Lee v. Children's Place Retail Stores, Inc.*, No. 14 C 3258, 2014 WL 5100608, at *2 (N.D. Ill. Oct. 8, 2014) ("when considering class certification under Rule 23, a district court may look beneath the surface of a complaint"). Several other courts have maintained that the pleadings are the only appropriate material to consider on a motion to strike class allegations. *See Jones v. BRG Sports, Inc.*, No. 18 C 7250, 2019 WL 3554374, at *4 (N.D. Ill. Aug. 1, 2019) (collecting cases and ultimately concluding that the review should be constrained to the face of the pleadings as well as documents incorporated by inclusion or reference); *DuRocher v. National Collegiate Athletic Ass'n*, No. 1:13-cv-01570-SEB-DML, 2015 WL 1505675, at *1 (S.D. Ind. Mar. 31, 2015) (declining to consider materials outside the pleadings on a motion to strike class allegations).

This Court agrees with the latter approach—its review must be limited to the face of the pleadings. It is therefore only the extraordinary situation where the pleadings make it apparent that class certification is not viable, even with the benefit of discovery, that a motion to strike will be granted. *See DuRocher*, 2015 WL 1505675, at *6 (motions to strike should be granted when court is unable to "see how discovery or for that matter more time would have helped") (quoting *Pilgrim*

*v. Universal Health Card, LLC*, 660 F.3d 943, 949 (6th Cir. 2011)). Accordingly, the Court will disregard the facts Grubhub has added in its motion to strike.

### A.    Typicality, adequacy, and commonality

Turning to Rule 23's requirements, a plaintiff may sue as a class representative if  "(1) the class is so numerous that joinder of all members is impracticable (numerosity); (2) there are questions of law or fact common to the class (commonality); (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class (typicality); and (4) the representative parties will fairly and adequately protect the interests of the class (adequacy)."

Aside from numerosity, Grubhub argues that Marshall has failed to meet all of the requirements for its proposed class. At the outset, Grubhub contends that Marshall's claim is not typical of the class because it did not stem from the same course of conduct as other class members' claims. To establish typicality, the plaintiff must show that each class member's injuries arise from the same event or practice and can be brought under the same legal theory, not that each member suffered the same injury as the named plaintiff. *Rosario v. Livaditis*, 963 F.2d 1013, 1018 (7th Cir. 1992). According to Grubhub, Marshall's experience leading up to the injury (the unwanted phone calls) was atypical because she provided Grubhub with her cell phone number twice. Further, Grubhub asserts that offering her phone number to Grubhub renders Marshall an inadequate class representative because she is not a member of the identified class. Specifically, Grubhub argues it can successfully rebut Marshall's TCPA claim using the prior express consent defense, which may not be the case for the rest of the class.

The problem with Grubhub's argument is that it rests entirely on allegations outside of the complaint, namely that Marshall consented to Grubhub's calls. Nowhere in the complaint does Marshall allege that she provided Grubhub with her number or consented to receiving its calls.

12

Indeed, Grubhub cited the allegations contained in its answer for support. Even if the Court were to consider Grubhub's now-moot answer,[6] this allegation violates the core dictate of Rule 8(b) that "[t]he only permissible responses to a complaint . . . are admission, denial or a statement of the absence of both knowledge and information sufficient to form a belief." *U.S. Liability Ins. Co. v. Bryant*, No. 3:10-cv-00129 JPG, 2011 WL 221662, at *1 (S.D. Ill. Jan. 21, 2011). Extraneous allegations, supported by exhibits attached to the answer, are not a proper response. It is therefore premature for Grubhub to allege, or for this Court to consider, Marshall having consented to receiving its calls.

Further, Grubhub relies primarily on *Cholly v. Uptain Group* for the proposition that a plaintiff consenting to calls defeats typicality and warrants striking the class allegations. No. 15 C 5030, 2017 WL 449176, at *3 (N.D. Ill. Feb. 1, 2017). Unlike in this case, *Cholly* involved a third amended complaint in which the plaintiff's claim was based on expressly revoking her consent. In ruling on the motion to strike class allegations in the first amended complaint two years earlier, the court held that it would be premature to do so prior to discovery. *Cholly v. Uptain Group, Inc.*, No. 15 C 5030, 2015 WL 9315557, at *3 (N.D. Ill. Dec. 22, 2015). It would be premature here as well to rule on the issue of consent where it is not alleged in the complaint. As a result, Grubhub has failed to demonstrate a lack of adequacy or typicality.

Further, to satisfy commonality, a plaintiff must show that a class action's claims turn on a "common contention," such that a "determination of its truth or falsity will resolve an issue that

---

[6] Grubhub asserts that the Court may consider its previous answer, which was superseded by the first amended complaint, because it is part of the record. *See Orgone Capital III, LLC v. Daubenspeck*, 912 F.3d 1039, 1048 (7th Cir. 2019) ("An amended pleading does not operate as a judicial *tabula rasa*."). Marshall disputes whether a moot answer can properly be considered. Ultimately, whether a prior answer can be properly considered is irrelevant to this analysis. As discussed below, Grubhub's responses are extraneous and therefore must be disregarded.

13

is central to the validity of each one of the claims in one stroke." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 349-50 (2011) (internal citation omitted). Differences within the proposed class may defeat commonality. *Id.* Grubhub points to the same issue here, alleging that it only calls individuals who have consented to receive calls and that determining consent must proceed on an individual basis through a series of mini-trials. Again, the Court will disregard Grubhub's contention that it only calls individuals who have consented to receive its calls because it constitutes an extraneous allegation.

Marshall identifies three common questions at issue: (1) whether Grubhub used an ATDS to call Plaintiff and the class, or a prerecorded voice for the subclass; (2) whether the class consented to Grubhub's calls; and (3) whether Grubhub knowingly or willfully violated the TCPA. The first two questions may be able to be resolved in one stroke following discovery. Marshall may prove whether Grubhub used an ATDS and whether it has identified a method for determining consent, or the lack thereof, on a class wide basis. *See Toney v. Quality Resources, Inc.*, 323 F.R.D. 567, 584 (N.D. Ill. 2018) (finding plaintiff satisfied commonality requirement on a TCPA motion for class certification where common questions included whether the defendant used an ATDS). Commonality does not doom Marshall's class action allegations at this juncture.

### B. Predominance and superiority

In addition to meeting Rule 23(a)'s requirements, the plaintiff must meet those of Rule 23(b). Under 23(b)(2), she may show that injunctive relief is appropriate or, alternatively, under Rule 23(b)(3), that "questions of law or fact predominate over any questions affecting only individual members," such that "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."

Rule 23(b)(3)'s predominance standard resembles the commonality requirement but is "far more demanding." *Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 623-24 (1997). A common question is one in which "the same evidence will suffice for each member to make a prima facie showing [or] the issue is susceptible to generalized, class-wide proof," while an individual question involves evidence that "varies from member to member." *Dancel v. Groupon*, 949 F.3d 999, 1004 (7th Cir. 2019). According to Grubhub, the individual questions at stake overshadow the common ones because the Court must determine, on an individual basis, the use of a prerecorded voice, the scope of consent, whether the call involved a transaction with the recipient, and whether the recipient attempted to revoke consent or be placed on the do-not-call list.

Courts are split on the question of predominance in TCPA cases. *See Jamison v. First Credit Servs., Inc.*, 290 F.R.D. 92, 106 (N.D. Ill. 2013) (collecting cases that indicate split and concluding that individual issues predominated over common ones in the case at bar). Ultimately, courts in this district have held that individual questions predominate in TCPA cases if the defendant can provide specific evidence that a "significant percentage" of the class consented to being called on their cell phones and the plaintiff has not provided a way to determine consent on a class wide basis. *Id.* at 106-07; *Toney*, 323 F.R.D. at 586-87. By contrast, if the defendant bases its predominance objection on "vague assertions about consent," common questions will prevail over individual ones. *Toney*, 323 F.R.D. at 587. Put simply, "opposition to predominance based on theory, not evidence, is not a weighty objection." *Id.* (quoting *Johnson v. Yahoo!, Inc.*, No. 14-cv-2028, 2016 WL 25711, at *7 (N.D. Ill. Jan 4, 2016)).

Theory is all Grubhub provides here. Without the benefit of class certification discovery, Grubhub has no evidence to support its contention that class members consented to receiving calls and that Marshall has no method of determining consent on a class-wide basis.

As for the superiority inquiry, the Court considers several factors, namely:

(A) the class members' interests in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already begun by or against class members; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (D) the likely difficulties in managing a class action.

Fed. R. Civ. P. 23(b)(3)(A)-(D). Grubhub concentrates solely on the last factor and contends that the class action will be too challenging to manage, given that Marshall's experience is unique from those of other class members. The Seventh Circuit has warned, however, that "refusing to certify on manageability grounds alone should be the last resort." *Mullins v. Direct Digital, LLC*, 795 F.3d 654, 664 (7th Cir. 2015). That is because the district court has discretion to direct the plaintiff to submit case management plans and to decertify the class at a later stage if it proves too unwieldy. This Court will heed the Seventh Circuit's warning and leave the issues of case management and superiority for another day.

### C.    Putative subclass

Grubhub asserts that Marshall's subclass cannot be maintained because she has not sufficiently alleged her membership in it and its lack of numerosity. This argument is premised on the mistaken understanding that the subclass is pursuing a do-not-call claim. That type of claim demands a different showing than a typical TCPA violation because the calls must be telemarketing in nature. *See* 47 C.F.R. § 64.1200(c). Grubhub argues that Marshall has not alleged its calls were telemarketing calls, but informational ones, and therefore cannot sustain a class based on this claim. Marshall, however, does not allege a cause of action under 47 C.F.R. § 64.1200(c). The distinction between the class and the subclass definition is the use of a prerecorded voice and the request to be placed on Grubhub's do-not-call list, not an alternative legal theory.

16

Grubhub's argument on the lack of numerosity is similarly unavailing. A plaintiff is not required to identify particular class members at this early stage, nor at the class certification stage for that matter. So long as a class is clearly defined with objective criteria, it is ascertainable. *Mullins v. Digital Direct, LLC*, 795 F.3d 654, 672 (7th Cir. 2015). That is the case here. Marshall has identified a specific group of people—recipients of Grubhub's prerecorded calls who had requested not to receive them—during a specific period, on or after June 4, 2015. That characterization is more than sufficient to demonstrate ascertainability at this stage.

### D. Certification under Rule 23(b)(2)

The Court may easily dispose of Grubhub's final argument that certification under Rule 23(b)(2) is improper. The TCPA allows a plaintiff to bring an action for injunctive relief, monetary damages, or both. 47 U.S.C. § 227(b)(3)(A)-(C). Grubhub maintains, however, that Marshall cannot demand injunctive relief because she seeks primarily monetary damages. Accordingly, it urges the Court to strike allegations under Rule 23(b)(2), which allows for class certification based on the pursuit of injunctive relief.

Rule 8(a) provides that a plaintiff may plead alternative forms of relief, without tying herself to the mast of either. *See also Pasant v. Jackson Nat. Life Ins. Co. of America*, 768 F. Supp. 661, 663 (N.D. Ill. 1991) ("it is true that [the plaintiff] must elect one of two inconsistent remedies at some time; that time is not now [at the pleading stage]"). So, too here, Marshall was entitled to set forth two alternative forms of relief in her complaint, without either being stricken for inconsistency. To determine whether Marshall can support the need for injunctive relief, in lieu of or in addition to monetary damages, will require a more complete factual record. *See Griffith v. ContextMedia, Inc.*, 235 F. Supp. 3d 1032, 1035 (N.D. Ill. 2016) (declining to dismiss plaintiff's demand for injunctive relief at the pleading stage in a TCPA because plaintiff needed opportunity

17

to develop factual record). Grubhub may wish to raise this argument, in addition to the objections to the class allegations discussed above, in response to a future motion for class certification. For now, its motion to strike class allegations is denied.

*      *      *

For the reasons discussed, Grubhub's motion to dismiss for lack of subject matter jurisdiction and failure to state a claim is denied. Its motion to strike class allegations is also denied.

Date: September 27, 2021

John J. Tharp, Jr.
United States District Judge