UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| DONNA MARSHALL,<br><br>      *Plaintiff*,<br><br>  v.<br><br>GRUBHUB INC.,<br><br>      *Defendant*. | Civil Action No. 1:19-cv-03718<br><br>Judge John J. Tharp, Jr.<br><br>Magistrate Judge Gabriel A. Fuentes |

**GRUBHUB INC.'S OPPOSITION TO PLAINTIFF'S
<u>MOTION TO COMPEL DISCOVERY</u>**

Plaintiff Donna Marshall ("Plaintiff") brings suit under a limited provision of the Telephone Consumer Protection Act of 1991 ("TCPA"), 47 U.S.C. § 227(b)(1)(A)(iii), which regulates calls made with an automatic telephone dialing system or a prerecorded or artificial voice. Plaintiff alleges that she received informational calls intended for a Grubhub restaurant partner, NaanStop, that featured a prerecorded voice without her consent. As discovery has demonstrated, the alleged calls to Plaintiff resulted solely from an isolated human error. A form onboarding NaanStop as a Grubhub restaurant partner mis-transposed one digit of the restaurant's phone number. As a result, Grubhub's business records reflected that Plaintiff's number was the restaurant's number. Although Plaintiff claims that she informed Grubhub of the wrong number after she began receiving calls, in fact, Plaintiff placed three calls to Grubhub – each of which she abandoned. Plaintiff abandoned two of those calls by hanging up before reaching an agent while, on the third time, she hung up despite agreeing to be transferred to a representative who could address her concerns. Plaintiff's own actions therefore delayed resolution of the issue that she claims led to this lawsuit.

In its discovery responses, Grubhub informed Plaintiff that it identified no other individuals who received similar informational calls intended for restaurants. (*See* Pl.'s Mot., Ex. A at 5, 9, 12-13, 19, 22, 27 [hereinafter Pl.'s Mot.].) But Plaintiff insists on trying to certify a class even though, based on Grubhub's business records, she is in a class of one. Despite her assertion that, if Plaintiff is the only person who received these wrong number calls, "the case [will] go away pretty quickly," (Tr. of Status Hr'g at 14:11-12, Feb. 14, 2022, ECF 88), Plaintiff persists in seeking expansive, burdensome, and irrelevant information from Grubhub that is untethered to Plaintiff's actual experience. (*See id.*) Grubhub has been forthcoming about the issue and provided or promised to provide additional relevant and responsive information in response to Plaintiff's discovery requests. For these reasons and those described below, this Court should deny Plaintiff's Motion to Compel.

## BACKGROUND

Plaintiff served her first set of discovery requests on October 19, 2021. The requests sought broad discovery unbounded by the unique circumstances that led to Plaintiff's claims. In its responses on December 2, 2021, Grubhub informed Plaintiff that after a reasonable investigation, it had identified no other instances where an individual had complained that they received calls meant for one of Grubhub's restaurant partners. Perhaps sensing difficulty for her ability to certify a class under these circumstances, Plaintiff now seeks information that is unrelated and irrelevant to her specific claim and any putative class she could represent. Plaintiff's requests will not identify anyone similarly situated to herself.[1] Plaintiff's requests even

---

[1] As this Court noted: "[P]laintiff concedes that its class definition as of now is a moving target: 'Plaintiff intends to focus on calls to wrong numbers – telephone subscribers whom Grubhub called in error using robotic prerecorded messages.' Plaintiff admits that the foregoing description of the proposed class 'does not parse things in this [same] way' as does the Amended Complaint. Plaintiff
*(cont'd)*

2

seek Grubhub's do-not-call policies and procedures, which are irrelevant to her claim, as well as voluminous, sensitive, and irrelevant call data.

Grubhub engaged in several meet and confer discussions with Plaintiff and, at Plaintiff's request, provided its positions in writing. In return, Grubhub asked that Plaintiff continue discussions in good faith and let Grubhub know of any additional perceived deficiencies. Instead, knowing that Grubhub had committed to producing additional documents and discovery responses, Plaintiff elected to short circuit the conferral process and to seek this improper relief.[2] At the time of the filing, Grubhub had already produced, or committed to produce, many of the documents that Plaintiff now seeks to compel. Specifically, Grubhub has committed to, to the extent that they exist and relate to communications with restaurant partners:[3]

- Identify the types of prerecorded calls made to restaurant partners and provide exemplars of each call type (Interrogatory 1; Request for Production [hereinafter RFP] 11);
- Identify one person on the technical and operational sides of calls to restaurant partners (Interrogatory 3, 4);
- Identify documents relevant to consent Grubhub received for outbound calls (Interrogatory 5);
- Identify any retained experts at the appropriate time (Interrogatory 9);

---

states that she expects, going forward in the lawsuit, to 'modify the class definition based upon discovery received.'" (Order at 11, ECF 95.) (citations omitted) As set forth herein, based on Plaintiff's unique circumstances, Plaintiff has no viable path to represent a certifiable class.

[2] Plaintiff's motion also advances the unsupported position that she has been forced to seek an order compelling discovery before she has the opportunity to assess the completeness of Grubhub's production.

[3] Grubhub has appropriately limited its responses to requests for wrong number policies and procedures to calls intended for restaurant partners, the wrong number circumstance under which Plaintiff's claim arose. Regardless, Grubhub does not initiate calls to consumers that might include a prerecorded message. Thus, the entire universe of calls are to Grubhub's restaurant partners.

- Produce nonprivileged documents regarding Plaintiff and her cell phone number (RFP 1);

- Produce nonprivileged documents describing the system that Grubhub uses for calls to restaurant partners and the process for making such calls (RFPs 4, 5);

- Produce nonprivileged documents regarding the prevention of restaurant partner calls to wrong numbers (RFP 7);

- Produce nonprivileged documents regarding compliance with the TCPA's prerecorded voice call provisions (RFP 8);

- Produce nonprivileged documents supporting Grubhub's affirmative defenses (RFP 16); and

- Produce nonprivileged documents received from third parties, any documents underlying affidavits or declarations prepared for the case, and nonprivileged documents underlying Grubhub's discovery responses pursuant to Federal Rule of Civil Procedure 26 (RFPs 17, 18, 19). (*See* Pl.'s Mot., at Ex. A and Ex. C.)

Grubhub also confirmed repeatedly that it is not aware of anyone else, other than Plaintiff, who received calls intended for restaurant partners. *See id.* at Interrogatories 2, 7, 8 and RFPS 2, 3, 10, 12, 14, 15. Despite its prior responses and good faith commitments, Plaintiff seeks to compel compliance with nearly every discovery request she propounded, seemingly on the basis that she believes that *any* limitation proposed by Grubhub, in an attempt to make the requests relevant to the alleged circumstances leading to Plaintiff's claim, is inappropriate.

## **LEGAL STANDARD**

As this Court noted, discovery must be "proportional to the needs of the case, considering," among other things, "the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R.

4

Civ. P. 26(b)(1). Thus, "in managing discovery in class actions, 'district courts are required to balance the need to promote effective case management, the need to prevent potential abuse, and the need to protect the rights of all parties.'" *Miner v. Gov't Payment Serv., Inc.*, No. 14-cv-7474, 2017 WL 3909508, at *4 (N.D. Ill. Sept. 5, 2017) (citation omitted). To this end, district courts "enjoy broad discretion in settling discovery disputes and in delimiting the scope of discovery." *Corley v. Rosewood Care Ctr., Inc. of Peoria*, 142 F.3d 1041, 1052 (7th Cir. 1998). As such, the Court invited the parties to seek its assistance if "either party embarks on discovery that is oppressive, irrelevant, or disproportionate to the needs of the case." (Order at 11, ECF 95.)

## ARGUMENT

**A.    Plaintiff Is Not Entitled to Discovery That Is Irrelevant or Disproportionate to Her Claims.**

Grubhub has consistently centered the discovery discussions around documents relevant to Plaintiff's claim, the subject of which is undisputed. Plaintiff received *informational* calls meant for one of Grubhub's restaurant partners because of a limited instance of human error, whereby one digit of NaanStop's phone number was mistakenly transposed on its restaurant onboarding form. As a result, Plaintiff received phone calls, which she alleges featured a prerecorded voice, that were intended for a consenting restaurant partner. Grubhub has provided documents from the restaurant reflecting its consent and obligation to provide Grubhub with accurate contact information. It has also consistently represented that its investigation has not identified any individuals who, like Plaintiff, allegedly received informational calls meant for restaurant partners. (*See* Pl.'s Mot., at Ex. A.at 5, 9, 12-13, 19, 22, 27.)  There is no additional discovery that could be pursued that will change this answer. It appears that Plaintiff does not like Grubhub's response because it precludes her representation of any class of individuals. Plaintiff's repeated requests for additional irrelevant information about all of Grubhub's

5

communications with its restaurant partners or its TCPA do-not-call policies and procedures are nothing but a fishing expedition that either seeks to find evidence for claims not pled or harass Grubhub.

It is well founded that "the requirement of Rule 26(b)(1) that the material sought in discovery be 'relevant' should be firmly applied," *Herbert v. Lando*, 441 U.S. 153, 177 (1979), and that "discovery is not to be used as a fishing expedition." *EEOC v. Harvey L. Walner & Assocs.*, 91 F.3d 963, 971-72 (7th Cir. 1996); *see also BankDirect Cap. Fin., LLC v. Cap. Premium Fin., Inc.*, No. 15 C 10340, 2018 WL 946396, at *4 (N.D. Ill. Feb. 20, 2018) ("Phrased differently, 'fishing expeditions' in discovery are prohibited because the information being sought is ultimately not 'relevant.'").

In addition, the limits imposed by Federal Rule of Civil Procedure 26(b) were designed to protect litigants against the problem of "over-discovery" by "encourag[ing] judges to be more aggressive in identifying and discouraging discovery overuse.'" Fed. R. Civ. P. 26(b) advisory committee's note to 1983 amendment. Therefore, "even ignoring questions of relevancy," there are cases "where the burden or expense of the proposed discovery outweighs its likely benefit" under Rule 26(b). *Sirazi v. Panda Express, Inc.*, No. 08 C 2345, 2009 WL 4232693, at *5 (N.D. Ill. Nov. 24, 2009).

### 1. Grubhub's Do-Not-Call Policies Are Unrelated to Plaintiff's Claims.

Plaintiff's requests for Grubhub's TCPA do-not-call policies and procedures are unbounded by Rule 26(b)'s restrictions. Plaintiff alleges one count against Grubhub under the limited provisions of 47 U.S.C. § 227(b)(1)(A)(iii), which prohibits calls made with an automatic telephone dialing system or a prerecorded or artificial voice to cellular telephones without prior consent. (*See* Am. Compl. at 10, 11, ECF 24). Plaintiff describes the discovery she seeks as including "policies, practices, and procedures" concerning do-not-call requests. (Pl.'s Mot. at 1.)

But do-not-call policies, practices, and procedures govern claims asserted under the TCPA's National Do Not Call provisions, which are found in 47 U.S.C. § 227(c) and its implementing regulations, address improper *marketing* calls to *residential lines* on the National Do Not Call Registry. *See Do Not Call*, Fed. Commc'ns Comm'n, https://www.fcc.gov/general/do-not-call (last visited May 24, 2022) (describing the Federal Communications Commission's work, in furtherance of its implementation of the TCPA, to develop the do-not-call registry, which "applies to all telemarketers and covers interstate and intrastate telemarketing calls"). Plaintiff has not alleged such a claim.

Plaintiff advances several flawed theories in an attempt to justify her broad requests for TCPA do-not-call policies and procedures. *First*, Plaintiff claims that the TCPA's provisions regarding prerecorded calls are content neutral. (*See* Pl.'s Mot. at 8-9.) But Plaintiff concedes that she only received *informational* calls and that such calls were directed to a Grubhub restaurant partner. This case is about *informational – not marketing –* calls.

More fundamentally, Plaintiff seems to misapprehend the TCPA's National Do Not Call provisions. These provisions, which are not at issue in this case, permit individuals to register their *residential* lines on the National Do Not Call Registry ("National DNC Registry") to prevent *unsolicited marketing calls to their residences*. If a subscriber on the National DNC Registry has an established business relationship with a business, then the TCPA's do-not-call provisions do not apply to that business unless the subscriber requests that the business place their number on the business's internal do not call list. As a result, the FCC requires businesses engaged in *marketing* calls to *residential lines* to implement do-not-call policies and procedures to ensure that an individual on the National DNC Registry can request that a business with which it has a relationship has a mechanism to stop receiving marketing calls from that business. *See* 47

7

C.F.R. § 64.1200(b)-(c). Such policies and procedures are thus irrelevant to the single claim alleged by Plaintiff under the TCPA's automated dialing provisions. (*See* Am. Compl. ¶ 41.)

More fundamentally, Grubhub does not engage in marketing calls to residential lines. It calls its restaurant partners. Plaintiff posits that TCPA do-not-call documents could be relevant to her claims by suggesting that she asked to be placed on a "do-not-call list." That is inaccurate. In her First Amended Complaint, Plaintiff alleges that she attempted to contact Grubhub about her receipt of informational calls intended for a Grubhub restaurant partner. (*Id.* ¶¶ 13-14.) She does not allege that she received calls in violation of the TCPA's National Do Not Call provisions. Specifically, Plaintiff does not allege that her number was on the National DNC Registry or that she received any marketing calls to her residential number.

Notably, discovery has confirmed that Plaintiff hung up or prematurely ended three inbounds calls to Grubhub, which prevented Grubhub from addressing her issue. Grubhub has agreed to provide any documents and procedures that address wrong number complaints. TCPA do-not-call policies and procedures are simply irrelevant to Plaintiff's unique situation or the limited claim alleged in this action.

Allowing Plaintiff to mine Grubhub's data for information relevant to unpled claims related to harms that Plaintiff has not suffered undermines the purpose of pretrial discovery and subjects Grubhub to the risk of litigation abuse. *See BankDirect Cap. Fin., LLC*, 2018 WL 946396, at *3-4 (finding that the Federal Rules of Civil Procedure "were not intended to be a ticket to an unlimited, never-ending exploration of every conceivable matter that captures an attorney's interest" and that relevancy is "perhaps the most important" constraint on discovery "given the potential for and the all too obvious reality of litigation abuse"). The bounds of discovery are not unlimited; the line is certainly drawn at matters irrelevant to a party's claim or

8

defense. *See* Fed. R. Civ. P. 26(b). The Court should therefore deny Plaintiff's requests relating to do-not-call documents and discovery.

### 2. Plaintiff's Requests for ALL of Grubhub's Call Data Seek Discovery Beyond the Scope of Plaintiff's Claims.

Likewise, Plaintiff's discovery requests relating to Grubhub's call data are entirely disproportionate to her case because they seek "information that is well beyond the scope of the allegations of the complaint." *Lowe v. CVS Pharmacy, Inc.*, No. 14 C 3687, 2015 WL 13427768, at *2 (N.D. Ill. Feb. 6, 2015). As described above, the alleged informational calls to Plaintiff resulted from a single digit mistake in the contact number provided by a restaurant partner to Grubhub. Yet Plaintiff seeks information regarding *all* "wrong number" call recipients, regardless of the circumstances that led to the call, for a period of *seven years*.[4] But Grubhub does not maintain "wrong number" call records. Undaunted, Plaintiff now demands all of Grubhub's call records. But such broad requests that encompass all of Grubhub's calls to its restaurant partners that provided their numbers to Grubhub to receive such calls are improper.

Because of their breadth, Plaintiff's call data requests are unduly burdensome. One court in this district analyzed a similar request, also propounded by a plaintiff represented by counsel for Plaintiff. In *Lowe*, the plaintiff sought "information concerning *any* individuals who received *any* automated or prerecorded call, for *any* reason, and under *any* circumstances, over a four year period." *Id.* (emphasis in original). The requests by Plaintiff here exceed even this threshold, seeking unlimited call data for a period of seven years. Magistrate Judge Michael Mason in *Lowe* declined to "burden" the defendant with responding to requests more narrow than those sought

---

[4] Although Plaintiff's requests specifically request data regarding "wrong numbers" and calls that were placed after a do-not-call request, Grubhub does not have a mechanism for tracking wrong number calls placed to restaurants. Plaintiff's requests state that in the event that Grubhub cannot identify this subset of data, Plaintiff demands access to the entirety of Grubhub's calling records. *See* RFPs 12-13.

9

by Plaintiff, as the *Lowe* plaintiffs' requests sought "vast number[s] of outgoing calls" and "many of these calls [are not] actionable under the TCPA, and, [because] they bear no similarity to the calls that plaintiffs received here, they are not relevant to plaintiffs' claims." *Id.* Plaintiff's call data requests must be "tailored in some way"—such as seeking only information related to the specific call types Plaintiff received—in order to conclude that "the information sought is relevant to the facts alleged in the complaint." *Id.*, at *3. Simply put, even when precertification discovery is appropriate,[5] courts have rejected requests that "go[] far beyond what is relevant to the class inquiry." *Id.* at *2.

The overly broad and irrelevant scope of Plaintiff's demands is buttressed by the fact that Plaintiff is unable to represent a class relevant to the discovery she seeks. In *Bustillos v. W. Covina Corp. Fitness*, No. 2:21-cv-04433, 2022 WL 423396, at *1 (C.D. Cal. Jan. 3, 2022), for example, the defendant fitness center entered a phone number provided by a potential member that was, like Plaintiff in this case, "one digit [off]" from the actual member's phone number, resulting in calls to the proposed lead plaintiff. The *Bustillos* plaintiff sought to represent a class of individuals who received the same calls with pre-recorded messages she was mistakenly sent. *Id.* However, the unique circumstance leading to the call she received—a one digit off error— was fatal to her ability to represent a broader class. The court found that while the proposed lead plaintiff could potentially represent a narrower class of individuals, who, like her, received calls "because Defendant mistakenly recorded a wrong phone number in its system," she could not represent anyone else. *Id.* at *4. The court held that the mistake leading to the calls to the lead

---

[5] Plaintiff alleges that she is entitled to wide-ranging discovery into class certification issues simply because discovery is not bifurcated. (*See* Pl.'s Mot. at 6, 7 n.11.) But despite Plaintiff's suggestion, the inquiry does not end there. Each discovery request is still subject to the relevancy and proportionality limitations enumerated in Rule 26(b).

10

plaintiff make her "entirely atypical of the class she seeks to represent and . . . an inadequate representative." *Id.* Like the Plaintiff here, the plaintiff in *Bustillos* was unable to produce evidence that "*any* other person who received the pre-recorded message was similarly situated, much less that Defendant entered enough wrong numbers to satisfy the numerosity requirement of Rule 23(a)(1)." *Id.* (emphasis in original).

Similarly, in *Revitch v. Citibank, N.A.*, No. 17-06907, 2019 WL 1903247 (N.D. Cal. Apr. 28, 2019), the proposed lead plaintiff, a noncustomer, brought suit under the TCPA after receiving calls to his cell phone that were meant for a customer. In his quest to represent a broad wrong number class, the proposed lead plaintiff, whose number was mistakenly provided to Citibank by a customer, suggested a method of identifying "wrong number" call recipients based on review of Citibank's internal call notes which, due to routine document destruction, no longer contained information regarding him. *Id.* at *2. The court found that the proposed identification method "excludes [plaintiff] from the class that he purports to represent." *Id.* at *3. Plaintiff, like Revitch, would also not be included in any proposed "indicia" of wrong number call analyses that Plaintiff might seek to apply to call data. Plaintiff has offered to conduct a "data analysis" to try to determine if any other calls to restaurant partners might be "wrong numbers," but she has not expressed how this analysis might be conducted and how it might reveal who might be similarly situated to her. If Plaintiff is trying to find "reassigned" numbers, while such studies are inherently unreliable, they would not identify Plaintiff, for example, as her number was not reassigned during the statutory period.[6] *See* Pl.'s Interrog. Resp. 4. Notably, the court in *Revitch*

---

[6] Moreover, numerous courts have found that wireless subscriber information is not a reliable indicator to identify the user of a cellular phone. *See Sandoe v. Bos. Sci. Corp.*, 333 F.R.D. 4, 9-10 (D. Mass. 2019) (declining to certify class because "up to 75% of cell phone carrier plans are friends and family plans meaning that a single subscriber is associated with multiple phone numbers[,] [t]he individual users of the associated numbers sometimes do and sometimes do not share a last name with the

*(cont'd)*

11

found that the disparate experiences of the proposed class, including the differences in consent present between a phone number provided by mistake vs. knowingly, prevented the named plaintiff from representing a broad wrong number class. *Revitch*, 2019 WL 1903247, at *3-4.

Like the plaintiffs in *Bustillos* and *Revitch*, Plaintiff's calls were the result of a unique circumstance. Plaintiff is limited by her unique experience and cannot represent all persons who might have received other types of "wrong number" calls. As a result, Plaintiff is not entitled to broad call data beyond the circumstances underlying her claim. For this reason, Plaintiff's requests for "wrong number" discovery, advanced without differentiation between the circumstances that led to the wrong number call, are disproportionate to the case, unduly burdensome and—because Plaintiff appears to be the only one who received any wrong number calls intended for restaurants—is unlikely to result in any information relevant to Plaintiff's claims or the claims of any class members she could potentially represent. Plaintiff can only represent persons who are similarly situated to her, and thus the unique circumstances of her experience prevent her from seeking discovery regarding those who fall outside that group. Plaintiff is simply not entitled to obtain access to all of Grubhub's call data in a desperate search for other situations where a restaurant's onboarding form had a mistake in the contact number. She is ill positioned to represent any broader class of potential wrong number recipients who might have received different calls, provided different consent to Grubhub, and experienced different circumstances leading to the call. Providing Plaintiff with the broad access she seeks

---

subscriber," and "[a]s a result, defendant has a unique potential consent defense against every proposed class member"); *Revitch*, 2019 WL 1903247, at *2 ("Notably, a single phone number can be associated with multiple accounts owned by different people."); *Mejia v. Time Warner Cable Inc.,* No. 15-CV-6445 (S.D.N.Y. Aug. 14, 2019), Docket No. 308 at 21 (declining to certify class in part because LexisNexis had confirmed that it could not be used to perform accurate historic reverse look-ups on cellular numbers to ascertain the identity of the person who may have received a wrong-number call).

12

would be a waste of the parties' time and resources because it will yield no relevant information and "[n]o amount of discovery can erase these plain distinctions" between Plaintiff and the group of individuals about whom Plaintiff seeks discovery. *Labou v. Cellco P'ship*, No. 2:13–cv–00844, 2014 WL 824225 at *4 (E.D. Cal. Feb. 28, 2014).

## B. Plaintiff is Entitled to No Further Discovery.

Plaintiff has argued that Grubhub "largely refused to provide responsive information or materials" and "often unilaterally limited the scope of its response." Plaintiff is incorrect. Grubhub produced documents on April 15, 2022, and—at Plaintiff's request—provided written responses to Plaintiff's inquires following extended meet and confers. In the written responses, Grubhub also committed to producing additional documents. (*See* Pl.'s Mot., at Ex. C.) Plaintiff herself explained this process in her motion. (*Id.* at 1-2, 17.)

Grubhub has already committed to providing Plaintiff with the relevant and responsive information she needs. *See supra*, Background. As an alleged wrong number recipient of allegedly prerecorded calls that were meant for a restaurant partner, discovery relevant to Plaintiff's claims consists of: i) information and documents regarding complaints about wrong number calls intended for restaurant partners; ii) the policies and procedures surrounding the informational calls to restaurant partners; and iii) documents relevant to Plaintiff, her phone number, and NaanStop.[7] In addition, despite her representation that the case would "go away" if Plaintiff was the only one that received wrong number calls intended for a restaurant, (Tr. of Status Hr'g at 14:11-12, Feb. 14, 2022, ECF 88), Plaintiff ignores Grubhub's repeated testimony

---

[7] Plaintiff admits that Grubhub had already produced many of these documents prior to the filing of her motion to compel, as she describes Grubhub's first production as containing, in part, "its agreements with two restaurants purportedly connected to its robocalls to Plaintiff" and "some Plaintiff-specific records." (Pl.'s Mot. at 2 n.2.)

13

that "after a reasonable investigation, other than this action, it has identified no complaints from consumers that they received telephone calls intended for Grubhub's restaurant partners." (*See* Pl.'s Mot., at Ex. A at 5, 9, 12-13, 19, 22, 27.)  Perhaps unhappy with the facts, Plaintiff's motion seeks to cast Grubhub as an obstructionist party when Grubhub has been forthcoming and committed to producing documents within the appropriate scope of discovery—items specifically related to the issues in the case and the unique harm Plaintiff claims to have suffered.

## CONCLUSION

Plaintiff's premature motion acknowledges that Grubhub has given Plaintiff discovery relevant to her claims, yet she seeks sweeping discovery far outside the bounds of her pleaded claims, the circumstances surrounding them, and any potential class she could represent. Because Plaintiff's Motion to Compel seeks irrelevant information, the breadth of which is wholly disproportionate to her claims, it should be denied.

Respectfully submitted,

Dated: May 25, 2022

/s/ Michael W. McTigue Jr.
Michael W. McTigue Jr. (*pro hac vice*)
Meredith C. Slawe (*pro hac vice*)
SKADDEN, ARPS, MEAGHER SLATE & FLOM, LLP
One Manhattan West
New York, New York 10001-8602
Telephone: 1.212.735.3000
mike.mctigue@skadden.com
meredith.slawe@skadden.com

William J. Cadigan
LAW OFFICE OF WILLIAM J. CADIGAN, P.C.
33 N. Dearborn Street, Suite 2350
Chicago, IL 60602
Telephone: (312) 207-0222
wcadigan@cadiganlaw.net

*Counsel for Defendant Grubhub Inc.*

14

## **CERTIFICATE OF SERVICE**

      I hereby certify that the foregoing Opposition to Plaintiff's Motion to Compel Discovery was filed electronically with the Clerk of the Court on May 25, 2022, using the CM/ECF system, which will send notification of such filing to all counsel of record.

                                                    */s/ Michael W. McTigue Jr.*
                                                    Michael W. McTigue Jr.