# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| DONNA MARSHALL, individually and on behalf of others similarly situated, Plaintiff, | Case No. 1:19-cv-03718 |
| v. | Hon. Judge John J. Tharp, Jr. |
| | Hon. Mag. Judge Gabriel Fuentes |
| GRUBHUB INC., Defendant. | |

## PLAINTIFF'S REPLY IN SUPPORT OF
## MOTION TO COMPEL DISCOVERY [Dkt. 96]

The Court has directed Plaintiff to file a reply addressing Grubhub's following arguments in opposition to Plaintiff's motion to compel discovery, Dkt. 96:

> (1) Grubhub, in its discovery responses including to Interrogatory Nos. 2, 7 and 8, already has confirmed for Plaintiff that Grubhub has identified no other persons who received "wrong number" calls from Grubhub (or complained of such calls), so that broader discovery into all calls Grubhub made or all numbers dialed, among other discovery requests, are disproportionate to the needs of the case; and

> (2) notwithstanding the district court's yet-to-be-made determination of Rule 23 issues such as typicality of plaintiff's claims and her adequacy as a class representative, plaintiff's efforts to represent a class in this matter are doomed by the reasoning of decisions such as Bustillos and Ravitch, see Opp. at 12-13, so that discovery beyond that which Grubhub already has provided, i.e., that "after a reasonable investigation, other than this action, [Grubhub] has identified no complaints from consumers that they received telephone calls intended for Grubhub's restaurant partners" is disproportionate.

Dkt. 99 (spacing added).

Grubhub's request that this Court deem as "disproportionate" any discovery that doesn't fit within its narrow view of the case – a view that precludes investigation into what Plaintiff actually requested or alleged – is incompatible with the scope of permissible discovery under the Federal Rules and directives from the Seventh Circuit that a defendant should not be immunized

from class action liability based upon its poor recordkeeping. *Mullins v. Direct Digital, LLC*, 795 F.3d 654, 668 (7th Cir. 2015).

Grubhub's argument that further discovery is disproportionate is self-serving, incomplete and misleading. First, the argument asserts that there are no wrong-number "restaurant partner" complaints, when Grubhub's responses were made "subject to and without waiver" of a multitude of boilerplate objections, and it has refused to identify whether or what it is withholding based on any objection, and why. Moreover, Grubhub has not submitted evidence substantiating any of its objections.

Second, Grubhub's position asserts that its investigation to identify wrong-number calls (even as to restaurant partners) was "reasonable," when evidence suggests it was not. Third, it incorrectly presumes that the failure to receive or record complaints means wrong number calls did not occur. And finally, the argument presumes that this case is limited to "telephone calls intended for Grubhub's restaurant partners" when it is not.

Most importantly, Grubhub's assertions are non-responsive to the discovery requests Plaintiff propounded, *see* Dkt. 96-1, ROGs 2, 7-8, and numerous courts have found the discovery Plaintiff seeks to be relevant and proportionate. Respectfully, the Court should not limit the scope of this case – or pre-judge that class certification is "doomed" such that no further discovery is warranted – based on disputed, non-responsive answers to three interrogatories.

**A.     Grubhub's objections are opaque, and it unilaterally narrowed the requests.**

A plain reading of interrogatories Nos. 2 and 7-8 shows that Grubhub's answers are non-responsive:

> <u>Interrogatory No. 2</u>. Identify all notices or complaints you have received or know about, concerning Grubhub automated or prerecorded/artificial message calls to persons for whom they were not intended.

Interrogatory No. 7. Identify each phone number you called using a prerecorded or artificial voice, which you were informed at any time was a wrong number, as well as the date, time, and context of such wrong-number notification and each call thereto.

Interrogatory No. 8. Identify all artificial or prerecorded message calls you made to wrong numbers, since June 4, 2015. If you contend you cannot ascertain which prerecorded message calls went to wrong numbers, Plaintiff is willing to do this work herself, and requests production of the data showing artificial or prerecorded message calls along with identifying information for the intended recipients.

Grubhub did not fully respond to these requests. Instead of simply saying, "none", Grubhub qualified its responses as being "subject to and without waiving" a litany of objections, and discretely qualifying the information it is providing without explaining what *it is not* providing pursuant to Fed.R.Civ.P. 33(b)(3)-(4):

- "Restaurant Partner" Limitation. Grubhub limited its responses to all three interrogatives to "restaurant partner" calls. However, neither the case nor the discovery requests are limited to "restaurant partner" *See* Amended Complaint, Dkt. 24 at ¶¶ 22, 33-41.

Grubhub used awkward and intentional language in its written responses that further limited the scope of its answers. Instead of simply saying "none," its responses say it has received no "complaints from consumers that they received telephone calls intended for Grubhub's restaurant partners." Unintended recipients like Ms. Marshall do not know why they are receiving Grubhuub's automated calls; they just know that their cell phones are "blowing up," and call Grubhub to get the calls to stop.

- Response Flip-Flop. Grubhub's assertion that it couldn't identify "complaints" in response to ROGs 7 and 8 is wholly unresponsive, because those requests don't ask for complaints. ROGs 7 and 8 instead seek identification of wrong-number phone numbers or calls, and the requests themselves offer to do the work to figure out which calls were to wrong numbers if Grubhub believed it was too tough to do so.

3

And while complaints may be *one way* of determining which calls were made to wrong numbers, they are not the *only way*. For example, any do not call request or phone number suppression concerning robocalls is an indication of a likely wrong number, particularly in the context of restaurant partner calls Grubhub claims that recipients should have wanted to receive.

- <u>"Consumer" Complaint Limitation</u>. Grubhub also limited its response to "consumer complaints"—a limitation that similarly appears nowhere else in this lawsuit. The claims in this case are not limited to calls to "consumers" because the private right of action under 47 U.S.C.§ 227(b)(1)(A)(iii) is not so limited. Moreover, companies often receive complaints or notices about potential robocall violations from state Attorneys General, the FTC, FCC, the Better Business Bureau, and similar—all of which are relevant to establishing the appropriateness of treble damages for willful or knowing violations under 47 U.S.C. § 227(b)(3). *Leeb v. Charter Commc'ns, Inc.*, 2019 WL 144132, at *2 (E.D. Mo. Jan. 9, 2019) (compelling all communications and documents concerning complaints about nonconsensual calls, finding it "relevant and proportional to the needs of the case with respect to [whether] Charter willfully or knowingly violated the TCPA").

- <u>What about Notices?</u> ROG 2 sought identification of "all notices <u>or</u> complaints" within the context of automated or artificial/prerecorded-voice calling, Grubhub didn't address the request as to notices at all.

- <u>Boilerplate</u> Grubhub's responses also say they are made "subject to and without waiving" a catalogue of boilerplate objections, any one of which may have operated to exclude relevant and responsive materials, including:

    o ***"Propriety Information" or Trade Secret.*** ROGs 2.

    o ***"irrelevant and/or protected information"*** ROGs 2.

4

- *"Improper, premature and irrelevant"* ROGs 2,7 & 8.
- *"Consent" from restaurant partners,* ROGS 7 & 8.
- *Ambiguous as to "wrong number notification"* 7&8.

Non-specific and unexplained objections to interrogatories are ineffective. Fed.R.Civ.P. 33(b)(4). Grubhub's unilateral decision to narrowly redefine the scope of Plaintiff's requests operates to allow it to claim no responsive documents exist, without actually disclosing whether a complete and direct response would result in the same result. Plaintiff's requests are on-target and reasonable, and the Court should direct Grubhub to respond to these requests without regard to *any* limitations. At least then, all the cards will be on the table.

**B. Grubhub's discovery responses are noncompliant with the Federal Rules and untrustworthy.**

Grubhub's responses to ROGs 2, 7 and 8 (and other requests) say its search and response was made "subject to and without waiver" of a litany of boilerplate and "general" objections. But Grubhub does not identify how those objections framed its responses or what is being withheld based upon which objections, and it refused to provide this information as part of the conferral process. This directly conflicts with the Federal Rules' requirement that a respondent identify what responsive information is being withheld and why, and "leaves it completely unclear whether the responding party is, in fact, withholding any information or documents based on its stated objection." *FONA Int'l, Inc. v. Roddy*, 2021 WL 5352611, at *3 (N.D. Ill. Jan. 19, 2021); *cf. Guzman v. Irmadan, Inc.*, 249 F.R.D. 399, 401 (S.D. Fla. 2008).

This matters because Grubhub is asking the Court to presume that it "has identified no other persons who received 'wrong number' calls from Grubhub (or complained of such calls)," but we don't know the extent to which that's true because: (1) Grubhub won't say, and (2) it only provided information on a narrowed subset of potential complaints "from consumers that they

5

received telephone calls intended for Grubhub's restaurant partners"—even though the complaint and requests aren't so limited, and have no need to be. *See* 47 U.S.C. § 227(b)(1)(A)(iii) (prohibiting making "any" autodialed or prerecorded-voice call to a cell phone).

Moreover, although Grubhub claims to have done a "reasonable search," it has not substantiated this and has refused to explain what sort of searches were performed. Even Grubhub's "supplement" filed late the night before this filing is due is ambiguous as to what it searched or analyzed. First, Plaintiff is puzzled as to why the search Grubhub apparently performed in the past week was not performed before it swore under oath that there were no complaints. Second, Grubhub's eleventh-hour assertion that it did an "exhaustive search and analysis" is again limited to complaints by an "individual" who claimed about receiving "restaurant partner" calls to a "cell phone." Grubhub should answer the request, as written.

Grubhub's supplement operates to buttress Plaintiff's position that what constitutes a "reasonable search" is subjective. Before the supplement filed last night, Grubhub refused to provide *any* details about possible locations where complaints may reside. For example, Plaintiff pointed out that there must be some sort of customer service log that contains notes of inbound calls, such as in Exhibit A—which demonstrates that Grubhub has access to documents that log – or are supposed to have logged – consumer complaints.[1] This document does not accurately describe the interaction with Plaintiff where Plaintiff asked to be placed on Grubhub's do-not-call list, and would be difficult to locate as part of a search. But Grubhub's apparently horribly kept records of incoming calls should not be a justification for Grubhub's refusal to produce. As the Seventh Circuit has directed, the Court should not "effectively immunize[] defendants from

---

[1] Plaintiff noticed up the deposition of Henrry Trejo, the person who answered Plaintiff's inbound complaint about Grubhub's calls, and after substantial meet-and-confer, Grubhub disclosed that Mr. Trejo never worked for Grubhub but instead works for a previously undisclosed third party called "Startek."

liability because they chose not to maintain records of the relevant transactions." *Mullins v. Direct Digital, LLC*, 795 F.3d at 668. One way the Court could handle the dispute as to Grubhub's complaints would be to direct Grubhub to disclose all locations where complaints reside, and direct the parties to agree upon a search protocol for finding relevant complaints. Plaintiff suspects that there are likely other sources for complaints, too. For example, Grubhub's "supplement" searched its "customer care" data, not inbound calls on phone lines dedicated to business partner robocall caller ID callbacks.

Indeed, by its own terms, Grubhub's response purports to answer a request substantially narrowed from the one Plaintiff issued. The response says Grubhub "has identified no complaints from consumers that they received telephone calls intended for Grubhub's restaurant partners." But ROG 2 asks for any type of notice or complaint (not just from consumers), concerning automated or prerecorded message calls (not just "restaurant partner" calls). And Grubhub didn't provide any responsive information for ROGS 7 or 8 at all, which sought the identification of wrong-number phone numbers and calls.

It is manifest that someone has designed these responses to exclude responsive and relevant materials. In August 2021, Plaintiff's counsel received a telephone call from an attorney in Indianapolis, Indiana, who was receiving the exact same types of wrong-number prerecorded calls on his business line from Grubhub, and that Grubhub had similarly not honored his requests to stop. Exhibit B, Jackson Decl. ¶¶ 2-4. This complaint is clearly responsive to Plaintiff's discovery request, but it was not disclosed—apparently because the calls were made to a business line rather than a "consumer" line to which Grubhub unilaterally narrowed its response.[2] Plaintiff mentioned this complaint during conferral talks, but Grubhub would not

---

[2] Plaintiff disclosed this complaint to defense counsel during conferral discussions, even though it is not responsive to Grubhub's discovery requests.

7

budge. Why should Plaintiff – or the Court – trust the veracity of Grubhub's interrogatory responses, when they misleadingly exclude responsive materials and information?

Plaintiff proposes that the Court direct that Grubhub disclose the locations where complaints are located and the database design for such, for example, customer service logs, support tickets and the compliance department, and that the parties develop a protocol for searching for responses to these interrogatories.

>   C. **Discovery into complaints/notices of wrong-number calls, and class discovery, is proportionate to the needs of the case.**

The Federal Rules define the scope of permissible discovery broadly, covering "any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Fed.R.Civ.P. 26(b)(1). Proportionality considers "the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." *Id.*

Here, the importance of the issues at stake in this action support a finding that the requests are proportional. "Americans passionately disagree about many things. But they are largely united in their disdain for robocalls." *Barr v. Am. Ass'n of Pol. Consultants, Inc.*, 140 S. Ct. 2335, 2343 (2020). For more than three decades, the TCPA has enjoyed wide bipartisan support in protecting call recipient privacy rights. *Id.* at 2343-44. Enforcing these privacy rights against TCPA violators honors the intent of Congress (which found that "banning robocalls was 'the only effective means of protecting telephone consumers from this nuisance and privacy invasion,'" *Id.*), promotes the public interest by compensating and providing injunctive relief to those subjected to violations, and serves as a necessary deterrent to others that might violate the statute. *Texas v. Am. Blastfax, Inc.*, 121 F. Supp. 2d 1085, 1091 (W.D. Tex. 2000); *Charvat v.*

*Valente*, 2019 WL 5576932, at *7 (N.D. Ill. Oct. 28, 2019).

Grubhub is wrong that Plaintiff requests "ALL" of its call data. Instead, only to the extent Grubhub claims it cannot itself identify wrong-number calls, Plaintiff seeks its *robocall* call data so that she can identify the violations herself—taking on the time and expense to do it alone. This is data Grubhub assured Plaintiff's counsel was preserved at the outset of this case.

The importance of this discovery to resolving the issues in this case supports a finding that requiring Grubhub to produce its call and consent-related data is proportionate. Grubhub's "we didn't find any complaints, so Plaintiff loses" argument is a red herring. First, we know that other people *did* complain to Grubhub about nonconsensual calling; it just won't produce them. Exhibit B, Jackson Decl. ¶¶ 2-4. But even if Grubhub had actually searched for responsive complaints outside of its self-imposed "restaurant partner" and "consumers" limitations, this doesn't mean that no violations occurred. It could be that Grubhub failed to properly record complaints, or that its process intentionally makes it difficult to identify complaints or for call recipients to notify it of an issue (as Plaintiff experienced when she made a do-not-call request). But there are other ways, discussed below, through which Plaintiff anticipates identifying violations. The alterative – i.e., accepting Grubhub's position – "would create the perverse incentive of encouraging companies to organize their systems and records in a way that make the information contained in them inaccessible except at great burden and cost." *Whiteamire Clinic, P.A., Inc. v. Quill Corp.*, 2013 WL 5348377, at *4 (N.D. Ill. Sept. 24, 2013) (compelling discovery); *Krakauer v. Dish Network L.L.C.*, 311 F.R.D. 384, 393 (M.D.N.C. 2015) (rejecting defense argument that its poor recordkeeping precludes TCPA class certification).

The TCPA prohibits making "any" nonconsensual, non-emergency robocall to a cell phone number. 47 U.S.C. § 227(b)(1)(A)(iii). This is the violation for which Plaintiff seeks

redress: Nowhere in Plaintiff's complaint or her discovery requests does she reference calls Grubhub meant for "restaurant partners" or otherwise purport to narrow the scope of her case in that way. Nor would doing so be appropriate, since whether a defendant intended to call a particular type of person or not is irrelevant to TCPA liability, even for purposes of its affirmative defense of consent. *Soppet v. Enhanced Recovery Co.*, 679 F.3d 637, 640-43 (7th Cir. 2012). What matters is that an "automatic telephone dialing system or an artificial or prerecorded voice" was used, 47 U.S.C. § 227(b)(1)(A)(iii), and that occurred regardless of whether the call was meant for a "restaurant partner" or someone else. Plaintiff objects to Grubhub's attempt to unilaterally narrow the scope of her case for no good reason, while at the same time depriving Plaintiff of pertinent discovery.

Plaintiff thus needs Grubhub's robocall data – beyond Grubhub's flat denial of the existence of complaints from consumers about calls for "restaurant partners" – because her *prima facie* case requires that she prove each robocall Grubhub made in violation of the TCPA. 47 U.S.C. § 227(b)(1)(A)(iii), (b)(3). This information is also critical to determining damages because the TCPA affords relief on a per-violation (i.e., per-call) basis. *Id.* It is also highly relevant to class certification, since Plaintiff will need to establish ascertainability, numerosity, and other Rule 23 requirements, and be able to rebut Grubhub's argument that purported individualized issues of "consent" preclude a finding of predominance. Complaints, too, are relevant to identifying witnesses and establishing the appropriateness of treble damages for willfulness under 47 U.S.C. § 227(b)(3). Where only Grubhub has wrong-number, do-not-call, and other consent-related evidence that might apply to its asserted consent defense, this evidence – and the evidence of the calls themselves – is crucial.

Grubhub refuses to tell Plaintiff what nonconsensual robocalls it made. The only way Plaintiff knows to identify them, then, is by analyzing its call and consent-related data. Grubhub has – but has not produced – data reflecting do-not-call requests (like Plaintiff herself made), which can be compared to its call data to identify calls that occurred after the recipient asked not to be contacted (and which were thus nonconsensual). Plaintiff also intends to identify other wrong-number call recipients by subpoenaing the cellular telephone carriers for subscriber/user records for the phone numbers Grubhub called, and then comparing that list with the list of people who gave Grubhub their phone numbers. This process has been used successfully in numerous cases. *Knapper v. Cox Commc'ns, Inc.*, 329 F.R.D. 238, 247 (D. Ariz. 2019) (certifying TCPA class employing carrier subpoenas to identify wrong-number class members); *Head v. Citibank, N.A.*, 340 F.R.D. 145, 157 (D. Ariz. 2022) (same); *Wesley v. Snap Fin. LLC*, 339 F.R.D. 277, 302 (D. Utah 2021) (similarly certifying class of noncustomers identifiable through reverse lookup); *Keim v. ADF MidAtlantic, LLC*, 328 F.R.D. 668, 694 (S.D. Fla. 2018) (certifying TCPA class of unknown call recipients, to be identified via carrier subpoena). In short, that Grubhub says it couldn't identify certain wrong-number complaints is in no way a condition precedent for certifying a TCPA class, but obtaining sufficient call and consent-related data is extremely important to establishing the merits of Plaintiff's case, damages, and class certification.

The amount in controversy here also supports a finding of proportionality for discovery on Grubhub's calls. This is a putative nationwide class action. Grubhub's vendor, Invoca, has produced roughly 3.4 million rows of outbound call data for the time period of November 1, 2019 to December 31, 2021. And although Invoca has asserted that it destroyed the remainder of Grubhub's call data in the ordinary course, Grubhub's counsel has asserted that Grubhub has

already gathered that data for litigation purposes and that it is in counsel's possession. Given that the call data has already been extracted and is in Grubhub's counsel's possession, there is literally zero burden to producing it. This is probably why Grubhub has not even *tried* to substantiate any burden in responding to these requests, whatsoever. Fed.R.Civ.P. 33(b)(4) operates as automatic waiver of any objection that is not stated with "specificity" "in a timely manner," absent a showing of good cause. *U.S. v. 58.16 Acres of Land, more or less in Clinton Cnty., State of Ill.*, 66 F.R.D. 570, 572 (E.D.Ill. 1975). Grubhub's burden objections – and all of its other objections, too – suffer from this infirmity. The reason this waiver Rule exists is that the Court cannot conduct a balancing test without specifics that substantiate a burden objection. Because Grubhub has not substantiated its alleged burden, and because the burden of producing its call records is nil, Grubhub should be compelled to produce them.

Grubhub faces tens of millions of dollars in exposure *minimum* if even 1.2% of those calls were nonconsensual, given the TCPA's $500 base statutory damages. 47 U.S.C. § 227(b)(3). And this doesn't even include the calls to Plaintiff and others who were called *before* the time period for which Invoca retained records—data only Grubhub has.[3]

The parties' relative access to relevant information and resources further supports a finding of proportionality. Plaintiff is a private consumer with limited resources. Grubhub is a large, recognizable corporation with thousands of employees, whose publicly traded parent purchased it for $7.3 billion in 2020.[4] Suffice it to say, Grubhub has significant resources.

---

[3]  Lest the Court believe Invoca's production is "good enough," Plaintiff notes that its records are basic call detail records that do not contain the more substantive information one would need to identify violations or rebut Grubhub's defenses. Plaintiff still needs Grubhub to supplement Invoca's production to provide the remaining call data for the class period (including for the calls to Plaintiff), to provide data pertaining to the context of which calls were with what campaign, and to provide any consent or other defense-related evidence Grubhub asserts as to each violation. Only Grubhub has this information.
[4]  *See* https://www.nytimes.com/2020/06/10/technology/uber-grubhub-just-eat.html.

Finally, the need for this discovery outweighs the burden or expense of production. Grubhub has failed to articulate any undue burden in providing the call, consent, and complaint materials requested at all. And when Plaintiff tried to confer and, for example, make good on ROG 8's offer to perform the data analysis herself to figure out which calls went to noncustomers, Grubhub demurred without explanation. Moreover, unlike the *Lowe* decision Grubhub cites in its response brief,[5] Grubhub already has its call data segregated for production, since it repeatedly confirmed to Plaintiff's counsel that Grubhub preserved it three years ago for purposes of this litigation. Why should it not produce it? And as it stands now, Grubhub is the only entity that can provide this highly relevant information because it admittedly allowed its call vendor, Invoca, to destroy its call records from before this case was filed—covering *all* of the calls Plaintiff received and going back the full, 4-year statute of limitations period. Grubhub should not be permitted to benefit from such spoliation, while at the same time offering no counterproposal to Plaintiff's reasonable offer to analyze its data herself. The complaint, call, and affirmative defense discovery at issue is routinely compelled in TCPA cases such as this[6] and, respectfully, it should be similarly compelled here.

---

[5] Plaintiff Marshall, who is represented by the same counsel as the plaintiff in *Lowe*, notes that the defendants there did ultimately produce billions of rows of call and consent data. We do not expect Grubhub's production to be that large.

[6] *E.g. Medina v. Enhanced Recovery Co.*, 2017 WL 5196093, at *3 (S.D. Fla. Nov. 9, 2017) ("Outbound call lists are relevant … to prove the merits of Plaintiffs' claims.") (citing cases); *Meredith v. United Collection Bureau, Inc.*, 319 F.R.D. 240, 243 & n.1 (N.D. Ohio 2017) (ordering TCPA defendant to write computer program to extract call and account note data from its system after finding that it is relevant to "the relief available under the TCPA because the statute provides for damages on a per-violation basis"); *Doherty v. Comenity Capital Bank*, 2017 WL 1885677, at *4 (S.D. Cal. May 9, 2017) ("The Court finds that outbound dial lists are relevant to establish the issues of numerosity and commonality under Federal Rule of Civil Procedure 23(a) and are therefore discoverable."); *Krakauer v. Dish Network, L.L.C.*, 925 F.3d 643, 658 (4th Cir. 2019) (affirming TCPA class certification, noting that "class-wide records were produced"); *Martin v. Bureau of Collection Recovery*, 2011 WL 2311869, at *4 (N.D. Ill. June 13, 2011) ("Unless [defendant] never intended to, and will not, assert a consent defense to the putative class claims—an assertion it does not make—it should have marshaled the evidence in support of that defense long ago.") (citation omitted); *Bernstein v. S. Cal. Tel. Co.*, 2020 WL 5289930, at *4 (C.D. Cal. May 27, 2020) ("obtaining this information … is the only meaningful way to

Because Plaintiff's discovery requests are relevant, and all proportionality factors are satisfied, the Court should grant Plaintiff's motion to compel.

### C. *Bustillos* and *Revitch* are distinguishable.

The Court directed Plaintiff to explain why cases such as *Bustillos* and *Revitch* do not doom this case, given that Grubhub claims not to have received wrong number complaints about calls intended for restaurant partners. Again, this case is not limited to calls that were intended to reach "restaurant partners," and Plaintiff objects to this unilaterally-imposed limitation. The TCPA provision under which Plaintiff brings suit, 47 U.S.C. § 227(b)(1)(A)(iii), prohibits making "any" nonconsensual call using an autodialer or an artificial or prerecorded voice to a cell phone; Grubhub's subjective intent about who it meant to call is irrelevant. *Soppet*, 679 F.3d at 640-43. Moreover, Grubhub has refused to disclose what types of calls this unilateral limitation omits, and so it would at the very least be imprudent to blindly exclude whole swaths of this case without further information about what types of robocalls were made.

More substantively, however, the out-of-Circuit *Bustillos* and *Revitch* decisions do not "doom" this case. Both denied class certification after the benefit of discovery – which Grubhub would have the Court preemptively deny Plaintiff here. Moreover, neither case held that a wrong-number class can *never* be certified; *Revitch* expressly acknowledged that "[d]istrict courts have split on the propriety of class certification in similar 'wrong number' TCPA actions,"

---

identify class members and prepare this case for trial."); *Martin v. Bureau of Collection Recovery*, 2011 WL 2311869, at *4 (N.D. Ill. June 13, 2011) ("If defendant cannot substantiate this defense with documents or information responsive to the interrogatory, it should say so under verification and withdraw that defense.); *Brodsky v. HumanDental Ins. Co.*, 2012 WL 12973195, at *3 (N.D. Ill. May 18, 2012) ("Courts have found that [consumer complaint] information is relevant to the issue of whether a defendant acted willfully in violating the TCPA."); *Leeb*, 2019 WL 144132, at *2 (compelling all communications and documents concerning complaints about nonconsensual calls, finding it "relevant and proportional to the needs of the case with respect to Plaintiff's allegations that Charter willfully or knowingly violated the TCPA").

*Revitch v. Citibank, N.A.*, 2019 WL 1903247, at *3 (N.D. Cal. Apr. 28, 2019). This is often dependent, as in *Revitch*, on the plaintiff's ability to establish predominance in light of consent evidence gleaned in discovery—including the kind of discovery Plaintiff seeks here. Plaintiff respectfully submits that if this case is doomed, that should happen in the context of a fully-briefed class certification motion, after a wholesome discovery period.

Each case is different, and so while the *Revitch* plaintiff may have employed an inadequate methodology that allowed the proposed class to include a significant number of consumers who consented to being called, Plaintiff does not expect that to be the case here, especially since, unlike in *Revitch*, she anticipates using more comprehensive carrier data instead of commercially available reverse-lookups. Moreover, unlike in *Revitch* in the Ninth Circuit, the Seventh Circuit's directive on class certification is that a district judge "normally should" certify the class and then "wait and see how serious the problem [of identifying class members] may turn out to be after settlement or judgment, when much more may be known about available records, response rates, and other relevant factors." *Mullins v. Direct Digital, LLC*, 795 F.3d 654, 664 (7th Cir. 2015). The Court should thus grant this motion, so that the parties can properly address these issues at class certification, on a sufficient record.

Similarly, in *Bustillos*, the Court acknowledged that the plaintiff "would likely be a typical and adequate representative" if he had been able to identify a narrower class of people who didn't consent to the calls; he just failed to do so. *Bustillos v. W. Covina Corp. Fitness, Inc.*, 2022 WL 423396, at *4 (C.D. Cal. Jan. 3, 2022). The discovery requested here by Plaintiff will help substantiate Plaintiff's claims that the elements for class certification are satisfied. Indeed, not only has the Seventh Circuit expressly rejected a heightened ascertainability requirement at class certification, *Mullins*, 795 F.3d at 658, but Grubhub's position would deprive Plaintiff the

opportunity to prove his ability to do so under the facts of *this* case. *See Manno v. Healthcare Revenue Recovery Grp., LLC*, 2012 WL 4192987, at *3 (S.D. Fla. Sept. 18, 2012) ("[I]t strikes this Court as untenable to rule at this stage that Plaintiff's class certification motion fails and, at the same time, Plaintiff is not entitled to the very discovery that may establish an essential element of the class.").

And while Plaintiff acknowledges that some wrong number TCPA cases have indicia of "wrong number" calls through, for example, codes in account notes, Plaintiff notes that: (1) the classes in those cases are not limited to "wrong number" dispositioned calls, but instead largely rely on reverse-lookups and/or carrier subpoenas to confirm a noncustomer like Plaintiff proposes doing here, *e.g., West v. Cal. Servs. Bureau, Inc.*, 323 F.R.D. 295, 304-305 (N.D. Cal. Dec. 11, 2017); and (2) Grubhub has not fully responded Plaintiff's requests concerning indicia of wrong-number calls or complaints. Also, there is sufficient evidence of evasiveness here, e.g., Exhibit B, to justify compelling Grubhub to respond fully to these interrogatories and the other requests pertaining to the calls Plaintiff sued about, complaints Grubhub received about analogous calling, and its affirmative defenses like consent. As such, Plaintiff's motion should, respectfully, be granted.

## IV. CONCLUSION

For the foregoing reasons, and for the reasons stated in Plaintiff's motion to compel discovery, Plaintiff respectfully asks that the Court grant her motion, and: (1) compel Grubhub to provide full and complete responses to Interrogatory Nos. 1-8, Request for Production Nos. 2-17, 19-21, and Request for Admission Nos. 1-3; (2) order Grubhub to amend its responses to identify what, if anything, it is withholding and why; and (3) grant such other and further relief the Court deems reasonable and just.

Dated: June 10, 2022

DONNA MARSHALL, individually and on behalf of others similarly situated

By: */s/ Alexander H. Burke*
 Alexander H. Burke
 Daniel J. Marovitch
 **BURKE LAW OFFICES, LLC**
 909 Davis St., Suite 500
 Evanston, IL 60201
 Telephone: (312) 729-5288
 aburke@burkelawllc.com
 dmarovitch@burkelawllc.com

 Justin T. Holcombe
 SKAAR & FEAGLE, LLP
 133 Mirramont Lake Dr.
 Woodstock, GA 30189
 Telephone: (770) 427-5600
 jholcombe@skaarandfeagle.com

*Counsel for Plaintiff*

**CERTIFICATE OF SERVICE**

I hereby certify that, on June 10, 2022, I caused the foregoing to be electronically filed with the Clerk of the United States District Court for the Northern District of Illinois using the CM/ECF system, which will send notification of such filing to all counsel of record.

 */s/ Alexander H. Burke*